IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARYLAND RESTORATIVE JUSTICE
INITIATIVE *et al.*,
    *Plaintiffs*,

     *v.*

GOVERNOR LARRY HOGAN *et al.*,
    *Defendants*.

Civil Action No. ELH-16-1021

## MEMORANDUM OPINION

Plaintiffs Calvin McNeill, Nathaniel Foster, and Kenneth Tucker (collectively, the "Named Plaintiffs"), along with the Maryland Restorative Justice Initiative ("MRJI"), "a grassroots membership organization dedicated to prisoners' rights," have filed suit against several Maryland officials, challenging Maryland's parole system as applied to individuals who received sentences of life imprisonment for offenses committed as juveniles ("Juvenile Offender" or "Juvenile Offenders"). ECF 1 ("Complaint"). *See id.* ¶¶ 13, 16. The Named Plaintiffs allege that although Maryland permits parole for a Juvenile Offender serving a life sentence, in practice the Maryland parole system, of which the Governor is a part, inflicts unconstitutional "de facto" sentences of life without parole. ECF 1 (Complaint), ¶¶ 11-12, 167-185. According to the Named Plaintiffs, they "have been and continue to be denied a meaningful opportunity for release," in violation of the Eighth Amendment to the Constitution and Article 25 of the Maryland Declaration of Rights. *Id.* ¶ 1.

Plaintiffs' 61-page Complaint also includes a challenge on behalf of all Maryland "juvenile lifers" (ECF 1, ¶ 1), a group of "more than 200 individuals," including the Named Plaintiffs. *Id.* ¶ 78. Plaintiffs assert that, as applied to individuals serving life sentences for offenses committed

as minors, the Maryland parole system subjects them to "unconstitutionally disproportionate punishment." *Id.* ¶ 12.

In support of their claims, plaintiffs rely on several recent decisions of the Supreme Court that bar, as unconstitutional, sentences of life without parole for Juvenile Offenders.  These include *Montgomery v. Louisiana*, 577 U.S. ____, 136 S. Ct. 718, 734 (2016); *Miller v. Alabama*, 567 U.S. ____, 132 S. Ct. 2455, 2469 (2012); and *Graham v. Florida*, 560 U.S. 48, 82 (2010).  Plaintiffs seek declaratory and injunctive relief, and a declaration that Md. Code § 7-301(d)(4) of the Correctional Services Article and § 2-201(b) of the Criminal Law Article of the Maryland Code are unconstitutional.  They also seek attorneys' fees and costs. ECF 1 at 59-61.

Defendants are four Maryland officials associated with the Maryland parole system: Governor Larry Hogan; David Blumberg, Chair of the Maryland Parole Commission ("MPC"); Stephen Moyer, Secretary of the Maryland Department of Public Safety and Correctional Services; and Wayne Webb, Commissioner of the Maryland Division of Correction ("DOC") (collectively, the "State").  Each defendant has been sued in his official capacity. *See* ECF 1 at 1-2.

Roberta Roper; Deborah Kempl and Jessica Fisher; and Patti Krogmann ("Individual Movants"), as "Crime Victim's Representatives," and the Maryland Crime Victims' Resource Center, Inc. ("MCVRC") (collectively, "Movants"), have filed a motion to intervene as defendants (ECF 9), supported by a memorandum (ECF 9-2) (collectively, "Motion" or "Motion to Intervene"). Individual Movants are family members of persons who were killed by Juvenile Offenders.  *See* ECF 9-2, ¶¶ 1-3.[1]  MCVRC "is a private, non-profit organization [that seeks] to ensure that victims of crime receive justice and are treated with dignity and compassion by providing

---

[1] The Individual Movants' loved ones were not killed by any of the Named Plaintiffs.

comprehensive victims' rights and services, including representing victims of crime and their lawful representatives." *Id.* ¶ 4.

With their Motion, Movants also filed a proposed motion to dismiss plaintiffs' Complaint (ECF 9-5); a supporting memorandum for the proposed motion (ECF 9-6); an appendix for the proposed motion (ECF 9-7); and a proposed answer (ECF 9-8).

Defendants filed a response to the Motion to Intervene (ECF 16, "State's Response"), in which they ostensibly "take no position on the ultimate question whether the Court will exercise its discretion to permit intervention by the movants . . . ." *Id.* at 1.  Plaintiffs have filed a response in opposition to the Motion (ECF 17, "Opposition"), and the Movants have filed a reply (ECF 18, "Reply"), supported by exhibits.

No hearing is necessary to resolve the Motion to Intervene.  *See* Local Rule 105.6.  For the reasons that follow, the Motion shall be denied.  However, Movants shall be permitted to participate in this case as amici curiae.

## I.    Factual Background[2]

The Named Plaintiffs are adult inmates in Maryland correctional institutions.  They are all serving life sentences for offenses they committed when they were juveniles.  ECF 1, ¶¶ 1, 13.[3]

Calvin McNeill "was sentenced to life with parole under Maryland's mandatory sentencing scheme for felony murder" (ECF 1, ¶ 122) for "his role in a fatal robbery of a dice game that

---

[2] For the purposes of this Memorandum Opinion, it is unnecessary to review fully plaintiffs' factual allegations.

[3] To be clear, the Complaint states that all three individual plaintiffs were sentenced to "life in prison" (ECF 1, ¶¶ 122, 137) or "life imprisonment." *Id.* ¶ 147. But, according to the Complaint, only McNeill and Tucker were expressly sentenced to life with parole. *Id.* ¶¶ 120, 136.

occurred in 1981, the day he turned 17 years old." *Id.* ¶ 120.  McNeill is now 51 years old.  *Id.* ¶ 121.  He has earned "an exceptional institutional record in the DOC" (*id.* ¶ 124), and has "taken advantage of every program available to him, earned positions of trust in employment, and taken leadership roles in programs to promote alternatives to violence within and outside DOC." *Id.* ¶ 124.  He was recommended for "commutation" in 2008, "[i]n recognition of this strong record . . . ." *Id.* ¶ 125.  In 2011, "Governor O'Malley rejected this recommendation without explanation." *Id.* ¶ 126.  McNeill's sixth parole hearing was scheduled for 2015 (*id.* ¶ 127) and, during that hearing, parole commissioners "told him they would be recommending him for a risk assessment." *Id.* ¶ 128.  As of the date of filing of the Complaint, McNeill had "not been transferred for the assessment." *Id.*

Kenneth Tucker "was sentenced to life with parole in 1974 at age 17 under Maryland's mandatory sentencing scheme . . . for participating in a robbery-murder with another teenager." *Id.* ¶ 136.  According to plaintiffs, in the commission of the robbery, "Mr. Tucker's co-defendant killed the victim." *Id.*  And, "[b]ecause the case involved a homicide that occurred during the course of a robbery, Mr. Tucker was charged with felony murder and faced a mandatory penalty of life in prison." *Id.* ¶ 137.  Tucker has been incarcerated for 42 years.  *Id.*

Plaintiffs maintain that Tucker "began turning his life around almost immediately upon his incarceration, earning his high school equivalency in 1975, an associate's degree in 1989, and a bachelor's degree in psychology in 1994." *Id.* ¶ 139.  Tucker has "obtained certification or training in several professions" and "is currently an observation aide in the prison hospital, where he provides consolation and coping strategies to terminally ill and mentally distressed peers." *Id.*  Tucker also belongs to the prison's "Scholars program" and serves as a volunteer mentor.  *Id.*  Plaintiffs aver that as early at 1987, "case management recommended [Tucker's] transfer to

preferred trailer housing and medium security because of his good institutional adjustment and infraction-free record . . . ." *Id.* ¶ 140.   Tucker has received consistently positive reviews and participated in numerous parole hearings. *Id.* ¶¶ 140-142.

Tucker had his sixth parole hearing in 2014. *Id.* ¶ 143. "Commissioners who heard his case recommended that he progress to the next step, which is the risk assessment . . . ." *Id.* However, "[a]fter the evaluation was completed, the parole commission denied parole and set his next hearing for 2017." *Id.* Plaintiffs contend that "[n]o additional information was provided about which aspects of the assessment caused concern nor what [Tucker] might do to demonstrate his readiness at his next parole hearing . . . ." *Id.*

In 1983, "Nathaniel Foster was involved in a botched robbery attempt along with his co-defendant," during which "the victim was killed." *Id.* ¶ 146.   He was seventeen years old at the time. *Id.*   Because Foster's case "involved a homicide that occurred during a robbery, Mr. Foster was charged with first-degree murder and subjected to a mandatory penalty of life imprisonment without adequate consideration of his youth status." *Id.* ¶ 147.   Foster has been incarcerated for 32 years. *Id.* ¶ 149.

While incarcerated, Foster has maintained "an exemplary institutional record" with "only two minor infractions in the last three decades" and no "infraction of any kind in the last 16 years . . . ." *Id.* ¶ 150.   Foster has also "pursued his education" and has "held a number of jobs while incarcerated including working in the canteen and cooking for the Officer's Dining Room." *Id.* ¶ 152.   Foster "has been entrusted with extraordinary responsibilities in these jobs" (*id.*), and has also "served as a volunteer helping to care for men who are gravely and terminally ill at the prison hospital." *Id.* ¶ 153.

According to plaintiffs, Foster has had numerous parole hearings in the last twenty years, including in 1995, 2000, 2005, 2008, 2011, and 2013. *Id.* ¶ 155; *see also id.* ¶¶ 156-165 (detailing determinations made during each hearing).   During the 2013 hearing, parole commissioners noted:  'Offender presented well, has excellent job evaluations and mentors younger prisoners. After considering all factors, a rehear for 1/2015 is suitable given nature & circumstances of offense.' ECF 1, Complaint, ¶ 165 (internal quotations omitted). However, plaintiffs state that, "[a]t the beginning of 2015, disheartened by his sense of futility in the parole process as he was repeatedly recognized for having an excellent record but then denied release due to the offense itself, without regard for his juvenile status, Mr. Foster declined a parole hearing." *Id.* Thereafter, during a 2016 parole hearing, Foster was "advised that he will be sent to Patuxent for a psychological evaluation." *Id.*

Of relevance here, plaintiffs maintain that two provisions of Maryland law are unconstitutional:  Md. Code (2012, 2015 Supp.), § 2-201(b) of the Criminal Law Article ('C.L.') and Md. Code (2008 Repl. Vol., 2015 Supp.), § 7-301(d)(4) of the Correctional Services Article ('C.S.').  According to plaintiffs, C.L. § 2-201(b) is unconstitutional because "it mandates judges to impose life sentences without adequate consideration of youth status . . . resulting in grossly disproportionate punishment in violation of the Eighth Amendment and Article 25 of the Maryland Declaration of Rights." ECF 1, ¶ 15.  Further, they argue that under C.S. § 7-701(d)(4), "only the Governor may grant parole to any individual serving a life sentence." *Id.* ¶ 60.  They assert, *inter alia*, that the "Governor's clemency authority" is unconstitutional because "it is exclusive and devoid of standards."  ECF 1 at 23.  Elaborating, plaintiffs maintain that the Governor is not required to follow or consider parole recommendations made by the MPC (ECF 1, ¶ 72); is not guided by any factors, either statutory or regulatory, in granting or denying parole

(*id.* ¶ 73); and is not required to make public the "criteria" used in deciding whether to grant or deny parole. *Id.* ¶ 76. They observe that from 1995 to 2015, a period of two decades, Governors Glendening, Ehrlich, and O'Malley received recommendations for parole for 24 individuals, both juveniles and adults, and rejected every one, without explanation. ECF 1, ¶ 116. In that time, the governors never approved even one parole request. *Id.* ¶ 117.[4]

In addition, plaintiffs criticize the policies and practices implemented by the MPC. *See id*, ¶¶ 81-90. According to plaintiffs, the policies and practices "make no distinction between youth and adults, fail to adequately consider the attributes of youth, and in some respects disproportionately penalize those who were youth at the time of offense, all while fundamentally impeding individuals from vindicating their right to a meaningful opportunity for release." *Id.* ¶ 82; *see also id.* ¶ 83-84. Further, plaintiffs maintain that the risk assessment tools used by the MPC to assess individuals impair their access to release because they "take no account of an individual's maturation over time, accomplishments [or] institutional record," but instead "penalize those who were youth upon arrival to [the DOC] by assessing them as they were when they were most risky and too young to have developed factors that the tools deem 'protective' against recidivism." *Id.* ¶ 87 (alterations added). Similarly, plaintiffs complain that DOC policies prevent Juvenile Offenders from a meaningful and realistic opportunity for release by "bar[ring] lifers, including juveniles, from eligibility for work release and family leave programs" and by preventing them "from moving below medium security status regardless of the individual's institutional record." *Id.* ¶ 91.

---

[4] In contrast, between 1969 and 1994, "181 lifers were paroled" by Governors Mandel, Hughes, and Schaefer. ECF 1, ¶ 118.

## II.        Standard of Review

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure.  It provides,

in relevant part:

> (a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:
>
>> (1) is given an unconditional right to intervene by a federal statute; or
>>
>> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) PERMISSIVE INTERVENTION.
>
>> (1) *In General.* On timely motion, the court may permit anyone to intervene who:
>>
>>> (A) is given a conditional right to intervene by a federal statute; or
>>>
>>> (B) has a claim or defense that shares with the main action a common question of law or fact.
>>
>> (2) *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
>>
>>> (A) a statute or executive order administered by the officer or agency; or
>>>
>>> (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.
>>
>> (3) *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

The Individual Movants seek intervention under Fed. R. Civ. P. 24(a) and (b).  The

MCVRC seeks intervention only under Rule 24(b).

## A.  Intervention of Right

In *Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013), the Fourth Circuit explained the standard for intervention of right under Rule 24(a)(2).  It said, *id.* at 349-50 (quoting *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991)):

> [A] district court must permit intervention as a matter of right if the movant can demonstrate "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation."

In addition to the three factors listed in *Stuart*, "timeliness is [also] a 'cardinal consideration' of whether to permit intervention . . . ."[5]  *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (citation omitted).

Under Rule 24(a)(2), once an intervenor has satisfied the three criteria for mandatory intervention, the burden of persuasion shifts such that intervention is mandatory, "unless the court is persuaded that the representation is in fact adequate." 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1909, at 390 (3d ed. 2007, 2016 Supp.).

In order to intervene as of right, a movant's interest in the action must be "significantly protectable" and a movant must "stand to gain or lose by the direct legal operation." *Teague*, 931 F.2d at 261 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)).  Moreover, "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the [movant] must demonstrate adversity of interest, collusion, or nonfeasance." *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976) (alteration added); *see also Stuart*, 706 F.3d at 350.

---

[5] In my view, the Motion (ECF 9) was timely.  It was filed less than two months after suit was initiated and before defendants filed responsive pleadings.  Moreover, plaintiffs do not dispute the timeliness of the Motion.  *See Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014).

Of relevance here, the Fourth Circuit has explained "that where the party who shares the intervenor's objective is a government agency, the intervenor has the burden of making a strong showing of inadequacy." *Stuart*, 706 F.3d at 350.  This heightened showing is required because "when a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government" and "to permit private persons and entities to intervene in the government's defense of a statute upon only a nominal showing would greatly complicate the government's job." *Id.* at 351.  For example, "the government could be compelled to modify its litigation strategy to suit the self-interested motivations of those who seek party status . . . ." *Id.*

Recognizing that statutes are passed "through the democratic process," the Court observed that "the business of government could hardly be conducted if, in matters of litigation, individual citizens could . . . intervene and assert individual points of view." *Id.*  (Citation omitted).  Thus, the Fourth Circuit said that when the government agency and the would-be intervenor share the same objective, "the putative intervenor must mount a strong showing of inadequacy.  To hold otherwise would place a severe and unnecessary burden on government agencies as they seek to fulfill their basic duty of representing the people in matters of public litigation." *Id.* at 352.

### B.  Permissive Intervention

Even if Rule 24(a)(2) does not mandate intervention, a party may be entitled to permissive intervention under Rule 24(b).  *See Stuart*, 706 F.3d at 349.  The decision to grant or deny permissive intervention "lies within the sound discretion of the trial court." *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (quoting *Hill v. Western Elec. Co. Inc.*, 672 F.2d 381, 386 (4th Cir. 1982)); *see also McHenry v. C.I.R.*, 677 F.3d 214, 219 (4th Cir. 2012).

In *Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co.*, 223 F.R.D. 386 (D. Md. 2004), then-District Judge Andre Davis distilled, from "the text of Rule 24(b) itself [and] case law interpreting

the rule," four conditions for permissive intervention, *id.* at 387 (citations omitted; alterations added):

> (1) that [the intervenor's] motion is "timely"; (2) that its "claim or defense and the main action have a question of law or fact in common" . . . ; (3) that there exists an independent ground of subject matter jurisdiction; and, (4) that "intervention will [not] unduly delay or prejudice the adjudication of the rights of the original parties."

The Fourth Circuit in *Stuart* discussed the challenges that accompany the addition of parties to an action, noting: "Additional parties can complicate routine scheduling orders, prolong and increase the burdens of discovery and motion practice, thwart settlement, and delay trial." *Stuart*, 706 F.3d at 350. The Court observed: "This is particularly so where . . . the proposed intervenors are themselves differently situated entities." *Id.*

In *Stuart*, the plaintiffs lodged a constitutional challenge to a North Carolina abortion-related statute, which required compliance with certain informed consent procedures before an abortion. "'[A] group of pro-life medical professionals, women who have previously undergone abortions, and pregnancy counseling centers' sought to intervene as defendants, pursuant to Fed. R. Civ. P. 24(a) and (b). The district court denied their motion, and the Fourth Circuit affirmed. *Id.* at 347. The Fourth Circuit stated: "Adding three groups of intervenors would necessarily complicate the discovery process and consume additional resources of the court and the parties." *Id.* at 354 (quotations omitted). That logic would apply here, as discussed below.

### III.     Discussion

### A.  Intervention as of Right

The Individual Movants seek to intervene as defendants as of right.  *See* ECF 9-2, ¶ 5.[6]

They contend that they have a stake in this action based on several provisions of law that provide

rights to victims of crime and their representatives.  ECF 9-2 at 6-7.  Individual Movants cite,

*inter alia*,  Article 47 of the Maryland Declaration of Rights; C.S. §§ 7-801(b) and 7-805(b); Md.

Code (2008 Repl. Vol., 2015 Supp.), §§ 11-403(e) and 11-503 of the Criminal Procedure Article

("C.P."); and the federal Crime Victims' Rights Act (the "CVRA"), 18 U.S.C. § 3771.[7]  According to

the Individual Movants, these provisions, and others, demonstrate "their state and federal statutory

rights to be notified and to participate in any criminal justice related parole, pardon, or judicial

sentencing proceedings filed by the convicted state defendant(s) who injured them . . . ."  ECF 9-2, ¶

6.  They argue that these "statutory and indefeasible victims' rights under Maryland law will be

lost without intervention" (*id.*), and that denial of intervention "will fatally impair and impede . . .

[their] ability to protect their legal interests."  *Id.* at 9.

In addition, the Individual Movants maintain that the State does "not adequately represent

[their] interests . . . ."  *Id.*  They argue, *inter alia*, "that in the past the Office of the Attorney

General has not always asserted and protected victim's [sic] rights when its own interest diverged

. . . ." *Id.* at 12.  To support this contention, they cite several instances in which the State opposed

---

[6] Defendants assert in their Motion that Individual Movants have relied on both Fed. R. Civ. P. 24(a)(1) and (a)(2).  *See* ECF 16 at 2.  However, as Individual Movants highlight in the Reply, they seek intervention as of right only under Rule 24(a)(2).  ECF 18 at 2; *see also* ECF 9-2, ¶ 5. Therefore, I need not address Rule 24(a)(1).

[7] The CVRA, 18 U.S.C. § 3771, grants victims, *inter alia*, the right to timely notice of any public court proceeding or parole proceeding (§ 3771(a)(2)); in general, the right to attend court proceedings (§ 3771(a)(3)); the right to be heard (§ 3771(a)(4)); as well as "the right to proceedings free from unreasonable delay" (§ 3771(a)(7)) and "the right to be treated with fairness and with respect for the victim's dignity and privacy."  *Id.* § 3771(a)(8).

the position of a victim or a victim's representative, or in which the State conceded error and agreed to new sentences.  ECF 9-2 at 13.[8]  Individual Movants argue that such cases make it clear that the State "has already determined to come down on the side of [sentence] review in favor of the inmate plaintiffs, rather than the . . . finality . . . favored by the victims." (Quotations omitted).

In the State's Response, defendants assert that they "take no position" on Movants' request to intervene as of right.  ECF 16 at 1.  Nevertheless, the State's submission suggests that it does not see any ground for intervention.

The State points out that no Maryland or federal statute provides a basis for the Individual Movants to intervene, and that the statutes on which Movants rely "primarily pertain to criminal proceedings." *Id.* at 2.  Defendants also posit that Individual Movants do not meet the Fourth Circuit's "demanding standard" for intervention of right because they "share 'the same ultimate objective as the existing defendants." *Id.* at 3 (citing *Stuart*, 706 F.3d at 351-52).  In the State's view, "[t]he movants cannot overcome the presumption of adequate representation merely by pointing to instances where the Office of the Attorney General has exercised its constitutional and statutory authority." ECF 16 at 5, ¶ 7.

The State also expresses concern that the Individual Movants misunderstand the Attorney General's "responsibilities as the State's legal officer." ECF 16 at 4.  They explain that the State's Attorney General "is first and foremost the lawyer of the State." *Id.* at 4 (citation omitted).  In that

---

[8] Individual Movants cite, *e.g.*, *Tunstall v. Shearin*, DKC-13-1781, a habeas action, in which the State conceded error and agreed to a resentencing; *Lindsey v. State*, 218 Md. App. 512, 98 A.3d 340 (2014) (including State's opposition to a victim's claim for restitution), *rev'd*, *Griffin v. State*, 444 Md. 278, 119 A.3d 753 (2015); *Lopez-Sanchez v. State*, 388 Md. 214, 879 A.2d 695 (2005) (including State's opposition to victim's claim for direct appeal); and *Cianos v. State*, 338 Md. 406, 659 A.2d 291 (1995) (including State's opposition to appeal filed by victim representatives).  *See* ECF 9-2 at 10, 12, 13.

role, the Attorney General has many constitutional and statutory duties, including, in criminal cases, "a responsibility to seek justice" and "the responsibility for determining whether to proceed with a criminal appeal or other post-conviction matter." ECF 16 at 4, ¶ 6.

Plaintiffs oppose the Motion to Intervene.   ECF 17.   They maintain that Individual Movants do not have a "significantly protectable interest" to be heard or notified because "this case involves neither their rights nor any other victim's rights to be heard . . . ." *Id.* at 8.   According to plaintiffs, the statutes that Individual Movants cite (*see* ECF 9-2, ¶ 6) do "not grant crime victims rights of intervention as parties, even in proceedings pertaining to the underlying criminal case of offenders who have wronged them."   ECF 17 at 8 (citing *Griffin v. Lindsey*, 444 Md. 278, 281, 119 A.3d 753, 754 (2015); *Lopez-Sanchez v. State*, 388 Md. 214, 224, 879 A.2d 695, 701 (2005)).[9]   Plaintiffs also point out that Individual Movants are not the victims or the victims' representatives for individuals wronged by the Named Plaintiffs.   *Id.*

Additionally, plaintiffs assert that the Individual Movants do not have an interest that will be impeded or impaired upon resolution of this case because the "case is about whether Maryland is compliant with the Eighth Amendment jurisprudence of the U.S. Supreme Court, not the sentence or parole of particular individuals."   ECF 17 at 9.   Further, they contend that "this case does not concern *any* victim's ability to assert the statutory rights Movants cite," and argue that even if plaintiffs prevail in this case, the victims retain their rights, such as to notice and to be heard.   *Id.* (emphasis in original).   Plaintiffs also claim that the Individual Movants do not meet the "standard required to rebut the presumption that the state will adequately defend the constitutionality of its policies." ECF 17 at 10.

---

[9] The parties incorrectly cite the second case as "*Lopez-Sanchez v. State*, **338** Md. 214, 225 (2005)." *See, e.g.*, ECF 17 at 8; ECF 18 at 15 (emphasis added).

In their Reply (ECF 18), Movants take issue with both the State's Response and plaintiffs' Opposition.  As to the State's Response, Movants assert: "Defending the lawsuit is not the same as adequately representing the interests of the Individual Movants, with whom the State has neither spoken nor even notified about the case." ECF 18 at 3.[10]  In their view, this "is precisely why crime victims have a state constitutional right to protect their interests and prevent the agents of the State from interfering with their rights."  *Id.* Noting that the State has not contradicted the Individual Movants' claim that the State's position is sometimes adverse to that of crime victims, Individual Movants argue that they "have met their burden to show the inadequacy of the State to protect their separate state constitutional, and federal and state statutorily protected interests." *Id.*

Further, the Individual Movants complain that "it is inconsistent for the [plaintiffs] . . . to seek relief that affects more than the three named individual Plaintiffs, but then to argue . . . that the Individual Movants do not have an interest because they are not the victim's representatives of the three named Plaintiffs." ECF 18 at 11.  They also argue that, even if the Individual Movants did not lose loved ones due to the crimes of the Named Plaintiffs, the Individual Movants have an interest in this case because MRJI has filed suit on behalf of all "individuals serving life sentences who were juveniles at the time of their offenses . . . ." *Id.* at 11.  Therefore, Movants contend this group may include a Juvenile Offender who harmed one of the Individual Movants.  *Id.*

For the reasons that follow, I conclude that there is no basis for intervention as of right.

---

[10] Individual Movants are not victims' representatives as to the Named Plaintiffs. Moreover, at this early stage of the case, it seems unreasonable to expect the State to have notified the victims' representatives as to some 200 Juvenile Offenders, especially given that the litigation, even if successful from plaintiffs' perspective, will not necessarily result in the reduction of sentences or parole.

The Movants have no statutory right to intervene under the provisions of law on which they rely.  The various laws cited by Movants—including Article 47 of the Maryland Declaration of Rights; C.S. §§ 7-801(b) and 7-805(b); C.P. §§ 11-403(e) and 11-503; and the CVRA, 18 U.S.C. § 3771—confer on crime victims or their representatives the rights, *inter alia*, to notice and to be  heard at criminal proceedings.  But, these provisions do not confer party status on victims or create a legal interest that permits intervention in civil matters.  *See, e.g.*, *Brandt v. Gooding*, 636 F.3d 124, 137 (4th Cir. 2011) (noting, for example, that the CVRA "makes no reference to intervention" and does not grant a victim the right to intervene); *Griffin*, 444 Md. at 281, 119 A.3d at 754 ("In Maryland, a victim is not a party to a criminal prosecution.") (citations omitted); *Lopez-Sanchez*, 388 Md. at 224, 879 A.2d at 701 ("The non-party status of a crime victim has been a central precept of Maryland criminal jurisprudence ever since public prosecution became the sole method of enforcing this State's criminal law.").

Moreover, the Individual Movants do not "stand to gain or lose [their rights] by the direct legal operation" of this case, so as to deprive them of a "significantly protectable" interest.  *Teague*, 931 F.2d at 261 (quoting *Donaldson*, 400 U.S. at 531).  As plaintiffs point out (ECF 17 at 9), even if the plaintiffs prevail, the Individual Movants will not lose their existing rights to be notified or heard in cases "involving the person who wronged them directly."  *See* ECF 17 at 9.  Because Individual Movants will not be deprived of any rights in this case, they have not demonstrated a "significantly protectable" interest, as required for intervention of right.  *Stuart*, 706 F.3d at 350.

Notably, plaintiffs have challenged the constitutionality of the Maryland parole system as applied to Juvenile Offenders, but they have not challenged the particular sentence of any

Juvenile Offender.  Indeed, the resolution of this case would not change the existing sentence of any offender.

Movants also fail to show that defendants will not adequately represent or protect their interests.  As noted, when, as here, "the party who shares the intervenor's objective is a government agency, the intervenor has the burden of making a strong showing of inadequacy." *Stuart*, 706 F.3d at 350.  Individual Movants have not met this burden.

Individual Movants seek to distinguish themselves from the proposed intervenors in *Stuart*, arguing that they "do not concede that their ultimate objective is the same as the State's . . . ." (ECF 18 at 3) (citing *Stuart*, 706 F.3d at 352).  As noted, they refer to numerous instances in which the State has taken positions. that do not coincide with those of victims. *See, e.g.*, ECF 9-2 at 9-14; *see also* ECF 18 at 7.  For example, in the Reply, Movants state that their "ultimate objective" is "to uphold the constitutionality of Criminal Law Article § 2-201(b), and to prevent unwarranted out-of-time resentencing hearings . . . ." ECF 18 at 7.  Yet, it is abundantly clear that the State's objective overlaps substantially with Movants' objectives.  For example, the State addresses the constitutional and statutory duty of the Attorney General to appear "in the courts as the defender of the validity of enactments of the General Assembly."   ECF 16, ¶ 5 (quoting *Duckworth v. Deane*, 393 Md. 524, 537, 903 A.2d 883, 890 (2006)) (*Duckworth's* internal citations omitted).

Moreover, the Individual Movants' efforts to highlight defendants' "adverse interests" do not demonstrate inadequate representation by the State.  *See Stuart*, 706 F.3d at 350.  The Attorney General's responsibility to apply or uphold the law does not constitute the kind of adverse interest contemplated by *Virginia v. Westinghouse Elect. Corp.*, *supra*, 542 F.2d at 216.   Nor have

Movants presented any authority or basis to suggest that the Attorney General was skirting the State's legal obligations in the cases cited by Movants.

Intervention of right is permitted only when all the criteria set forth in Fed. R. Civ. P. 24(a)(2) have been met. *Stuart*, 706 F.3d at 349-50. Here, Individual Movants have failed to show that they have a "significantly protectable" interest in the subject matter of this case, which in turn diminishes the likelihood that this interest would be impaired by resolution of this matter. Additionally, Individual Movants have not presented sufficient support to suggest that defendants will not "adequately represent" any interest they may have in this case. *See Stuart*, 706 F.3d at 349-50. Accordingly, the Motion, insofar as it is based on intervention of right, shall be denied.

### B. Permissive Intervention

In the alternative, the Individual Movants seek permissive intervention, pursuant to Fed. R. Civ. P. 24(b)(1)(B). MCVRC joins the Motion for permissive intervention, claiming "to serve as a voice for those yet-to- be- identified victim's representatives of the others [sic] murderers who have been ignored so far, and are on the cusp of having their individual victims' rights eliminated." ECF 9-2 at 15. They rely largely on the arguments previously advanced to support the Motion based on intervention of right. ECF 9-2 at 17. For the reasons stated below, I shall deny permissive intervention under Fed. R. Civ. P. 24(b)(1)(B).

Where "multiple crime victims" are involved, the CVRA requires courts to "fashion a reasonable procedure" for victims to be heard "that does not unduly complicate or prolong the proceedings." 18 U.S.C. § 3771(d)(2). Relying on this provision, Movants argue that MCVRC should be permitted to intervene "because the number of projected victims is unknown and it would be impracticable to individually afford each of these victims his or her rights." ECF 9-2 at

16.  MCVRC contends that its intervention would suffice as a "reasonable procedure" that would protect the rights of unknown victims' representatives.  *Id.*  Further, Movants argue, *inter alia*, that amicus curiae status "does not adequately represent [their] interests" because they "are more than friends of the court or interested bystanders." *Id.* at 19.  According to Movants, "[t]hey have a legal and factual interest by their status in the case as the victim, or as the victim's representative." *Id.*

Defendants have not specifically addressed the Movants' arguments for permissive intervention.  *See* ECF 16, State's Response.  However, defendants state that they "have already conveyed to the movants' counsel that the defendants will consent to a motion for leave permitting the movants to submit briefing as amicus curiae." *Id.* at 1.

Plaintiffs argue that Movants do not meet the Fourth Circuit's standard for permissive intervention under Fed. R. Civ. P. 24(b). *See* ECF 17, Opposition, at 13-19.  In particular, plaintiffs contend that Movants "offer no specific claim or defense that shares any factual or legal questions with the issues raised in this case." *Id.* at 14.  Plaintiffs also argue that intervention by Movants "will have profoundly burdensome and prejudicial impacts at every stage of proceedings before this Court . . . ." *Id.* at 15. They explain: "Movants entry into this case as formal parties would expand discovery and trial testimony enormously, causing delay and expense, and would potentially derail the Court and the trier of fact from focusing on the core constitutional issues in dispute." *Id.* at 15.  In their view, providing Movants with amicus status is an appropriate alternative to intervention. *Id.* at 18.

In their Reply, Movants reiterate that "[a]micus status is insufficient to protect [their] interests." ECF 18 at 23.   In particular, Movants assert that "[c]rime victims and their representatives in Maryland are more than just mere members of the public." *Id.*  They argue:

"The allegations in this case attack the legality of the sentences for those who have committed first degree murder when under age 18, and victim's representatives of those murderers should be accorded the same rights that they would have in state court." *Id.* at 24.  Movants also dispute that intervention would cause a delay (ECF 18 at 20-21)

To be sure, the Movants have expressed concern that their interests do not coincide with those of the State, because the State might agree that the disputed statutory provisions and/or the parole system are unconstitutional—a view with which they vigorously disagree.  But, assuming, *arguendo*, that the statutory provisions and/or the parole system are unconstitutional, Movants would not have an interest adverse to the State, because Movants have no legal right to obtain enforcement of laws that are unconstitutional.

Movants contend that intervention will not delay this case, noting that they have already filed a proposed answer and proposed motions (*see* ECF 18 at 21; ECF 9-5; ECF 9-6; ECF 9-7; ECF 9-8), and will seek limited discovery.  ECF 18 at 21.  However, Movants have not addressed the considerable complication that will be caused by including additional parties to this case.  They have also failed to show that granting intervention "will not unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  In my view, permitting intervention of several individuals and an organization would "result in undue delay in adjudication of the merits, without a corresponding benefit to existing litigants, the courts, or the process," particularly considering that the "existing Defendants are zealously pursuing the same ultimate objectives as the movants." *Stuart v. Huff*, 11-CV-804, 2011 WL 6740400, at *3 (D.M.D.N.C. Dec. 22, 2011), *aff'd*, *Stuart*, 702 F.3d 345; *see also Shanghai Meihao Elec., Inc.*, 223 F.R.D. at 387.

Finally, conferring amicus status on Movants is a suitable alternative for them to bring their concerns to the Court's attention. *See, e.g.*, *Stuart*, 706 F.3d at 354 (denying intervention and noting that the movants "retain[ed] the ability to present their views . . . by seeking leave to file amicus briefs"); *Brandt*, 636 F.3d at 136-37 (concluding that amicus status for a victim representative seeking intervention "was fully commensurate . . . and provided [her] a full and fair opportunity . . . to provide information and communicate her views to the court").

## IV.    Conclusion

For the foregoing reasons, Movants' Motion to Intervene (ECF 9) shall be denied. However, they shall be granted amicus status. A separate Order follows, consistent with this Memorandum Opinion.


Date: August 30, 2016                            _____/s/_____
                                                 Ellen Lipton Hollander
                                                 United States District Judge