### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

MARYLAND RESTORATIVE       \*
JUSTICE INITIATIVE, *et al.,*
         *Plaintiffs,*       \*

      v.       \*     Case No. 1:16-cv-01021-ELH

GOVERNOR LARRY HOGAN, *et al.,*       \*
         *Defendants.*
      \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Barry J. Fleishman, Esq. (Bar No. 15869)
KILPATRICK TOWNSEND STOCKTON LLP
607 14TH Street, N.W., Suite 900
Washington, D.C. 20005
Tel:  (202) 508-5835
bfleishman@kilpatricktownsend.com


Deborah A. Jeon (Bar No. 06905)
Sonia Kumar (Bar No. 07196)
ACLU of MARYLAND
3600 Clipper Mill Road, Suite 350
Baltimore, MD 21211
Tel:  (410) 889-8550 x 103
jeon@aclu-md.org
kumar@aclu-md.org

September 9, 2016            *Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

SUMMARY OF ARGUMENT ............................................................................. 2

ARGUMENT ........................................................................................................ 7

I.     PLAINTIFFS' ACTION SEEKS STATUTORY AND PROCEDURAL REFORMS, AND IS PROPERLY BROUGHT TO THIS COURT UNDER SECTION 1983 ............ 7

II.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS ................................................................................................... 11

III.   PLAINTIFFS HAVE ASSERTED COGNIZABLE LEGAL CLAIMS AND ALLEGED SPECIFIC FACTS SUFFICIENT TO SUPPORT THEM ........................... 16

       A.    Standard of Review ................................................................................. 16

       B.    Plaintiffs Have Sufficiently Pled The Basis For Their Contention That States Must Afford Juveniles A Meaningful And Realistic Opportunity For Parole...... 18

       C.    Plaintiffs Have Pled Sufficient Facts To Assert A Claim That Maryland's Parole Scheme Fails To Meet the Standards Set By the Supreme Court In Miller and Montgomery. ...................................................................................... 23

IV.   SUMMARY JUDGMENT IS WHOLLY INAPPROPRIATE PRIOR TO DISCOVERY, AND ESPECIALLY IN THE CONTEXT OF THIS CASE .................. 28

V.    DEFENDANTS ARGUMENTS REGARDING THE PLRA ARE WITHOUT MERIT 31

CONCLUSION ..................................................................................................... 35

# TABLE OF AUTHORITIES

## Cases

*A Society Without a Name v. Va.*,
   655 F.3d 342 (4th Cir. 2011)............................................................. 5, 12, 13, 15

*Aiken v. Byars*,
   410 S.C. 534 (South Carolina 2014) .................................................. 22

*Alabama Disabilities Advocacy Program v. Wood*,
   584 F. Supp. 2d 1314 (M.D. Ala. 2008) ............................................ 32

*Anand v. Ocwen Loan Servicing, LLC*,
   754 F.3d 195 (4th Cir. 2014)............................................................. 17

*Anderson v. Liberty Lobby*,
   477 U.S. 242 (1986) ........................................................................ 28, 34

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 17

*Bailey v. Va. High School League, Inc.*,
   488 F. App'x 714 (4th Cir 2012) ...................................................... 3, 29

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp.*,
   522 U.S. 192 (1997) ........................................................................ 5, 12

*Bear Cloud v. State*,
   2013 WY 18, at ¶¶ 33-34 (Wyo. 2013) ............................................ 23

*Blankenship v. Manchin*,
   471 F.3d 523 n. 1 (4th Cir.2006)....................................................... 17

*Brown v. Georgia Bd. of Pardons & Paroles*,
   335 F.3d 1259 (11th Cir. 2003) ........................................................ 13

*Burnette v. Fahey*,
   687 F.3d 171 (4th Cir. 2012)............................................................. 21

*Casiano v. Comm'r of Correction*,
   317 Conn. 52 (2015) ........................................................................ 23, 30

*Cathcart v. State*,
   397 Md. 320 (Md. 2007) .................................................................. 22

*Cooey v. Strickland*,
   479 F.3d 412 (6th Cir. 2007)............................................................. 5, 12

*Cunio v. Brown*,
   2015 WL 3407883, D. Or., May 27, 2015 ....................................... 10, 11

*Diatchenko v. District Attorney for Suffolk Dist.*,
   471 Mass. 12 (2015)......................................................................... 23

*Dist. Att'y's Office for Third Judicial Dist. v.Osborne*,
  557 U.S. 52 (2009) ................................................................................ 11

*E. I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) ............................................................. 3, 29

*Edwards v. Balisok*,
  520 U.S. 641 (1997) ............................................................................... 11

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) .......................................................... 16, 17

*Fox v. Stanton*,
  529 F.2d 47 (4th Cir. 1975) .................................................................. 13

*Funchess v. Prince*,
  No. CV 14-2105, 2016 WL 756530 (E.D. La. Feb. 25, 2016) ......... 22, 25

*Gaston v. Taylor*,
  946 F.2d 340 (4th Cir. 1991) ............................................................... 21

*Gay v. Wall*,
  761 F.2d 175 (4th Cir. 1985) ............................................................. 3, 29

*Graham v. Florida*,
  560 U.S. 48 (2011) ......................................................................... passim

*Graziano v. Pataki*,
  689, F.3d 110 (2nd Cir. 2012) .............................................................. 21

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Baltimore*,
  721 F.3d 264 (4th Cir. 2013) ............................................................... 29

*Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*,
  442 U.S. 1 (1979) ................................................................................ 21

*Greiman v. Hodges*,
  79 F. Supp. 3d 933 (S.D. Iowa 2015) ....................................... 10, 18, 21

*Hall v. Burney*,
  No. 11-6566, 2011 WL 5822176 (4th Cir. Nov. 18, 2011) ................... 17

*Harrods Ltd. v. Sixty Internet Domain Names*,
  302 F.3d 214 (4th Cir. 2002) ............................................................... 29

*Hawkins v. NY State Dep't of Corr. & Comty. Supervision*,
  140 A.D.3d 34 (N.Y. App. Div. 2016) .................................................. 21

*Hayden v. Keller*,
  134 F. Supp. 3d 1000 (E.D.N.C. 2015), 2016 WL 4073275 (4th Cir. N.C.,
  Aug. 01, 2016) ......................................................................... 10, 19, 25

*Heck v. Humphrey*,
  512 U.S. 477 (1994) .................................................................... 4, 8, 9, 10

*Hill v. Snyder*,
  821 F.3d 763 (6th Cir. 2015) ........................................................ 10, 19

*In Re Wright*,
  826 F.3d 774 (2016) ................................................................................................ 9

*Jarboe v. Maryland Dep't of Public Safety & Corr. Servs.*,
  No. CIV.A.ELH-12-572, 2013 WL 1010357 (D. Md. Mar. 13, 2013)...................................... 32

*Johnson v. City of Shelby,* Miss.*,*
  135 S. Ct. 346 ................................................................................................ 16

*Johnson v. RAC Corp.*,
  491 F.2d 510 (4th Cir. 1974)................................................................................ 3, 29

*Jones v. Bock*,
  549 U.S. 199 (2007) ........................................................................................ 31, 32

*Jones v. Quintana*,
  658 F. Supp. 2d 183 n. 17 (D.D.C. 2009) ................................................................ 24

*Lomax v. Warden, Maryland Corr. Training Ctr.*,
  356 Md. 569, 741 A.2d 476 (MD. 1999) ................................................................ 12, 15

*Lovett v. Ray*,
  327 F.3d 1181 (11th Cir. 2003)........................................................................... 13

*Miller v. Alabama*,
  567 U.S. ____, 132 S. Ct. 2455, (2012) ............................................................. passim

*Montgomery v. Louisiana*,
  577 U.S. __, 136 S. Ct. 718 (2016) ................................................................... passim

*Nader v. Blair*,
  549 F.3d 953 (4th Cir. 2008)............................................................................... 29

*Nat'l Advert. Co. v. City of Raleigh*,
  947 F.2d 1158 (4th Cir. 1991)............................................................................ 15

*People v. Gutierrez*,
  324 P.3d 245 (Cal. 2014) ................................................................................. 20

*People v. Holman*,
  __ N.E.3d ___, 2016 WL 868413 (Ill. App. Ct 2016) ............................................... 20

*Philips v. Pitt Cty. Mem. Hosp.*,
  572 F.3d 176 (4th Cir.2009)............................................................................... 17

*Raynor v. Pugh*,
  817 F.3d 123 (4th Cir. Mar. 17, 2016) ................................................................ 28

*Ross v. Blake*,
  136 S. Ct. 1850 (2016) ................................................................................. 33, 34

*Scott v. Clark*,
  42 F. Supp. 3d 813 (W.D. Va. 2014) ................................................................ 15

*Semple v. Casiano*,
  136 S. Ct. 1364 (2016) ................................................................................. 23, 30

*Slade v. Hampton Roads Reg'l Jail*,
 407 F.3d 243 (4th Cir. 2005)..................................................................................... 18

*Solem v. Helm*,
 463 U.S. 277 (1983) ........................................................................................... 20, 25

*State v. Castaneda*,
 287 Neb. 289, , 842 N.W.2d 740 (2014)..................................................................... 23

*State v. Long*,
 8 N.E.3d 890 (Ohio 2014)......................................................................................... 20

*State v. Louisell*,
 865 N.W.2d 590 (Iowa 2015) .................................................................................... 26

*State v. Riley*,
 315 Conn. 637 (2015) ............................................................................................... 22

*Swarthout v. Cooke*,
 562 U.S. 216 (2011) .................................................................................................. 21

*Thomas v. Eby*,
 481 F.3d 434 (6th Cir. 2007)..................................................................................... 10

*Tobey v. Jones*,
 706 F.3d 379 (4th Cir. 2013)..................................................................................... 17

*Trotter v. Kennedy Krieger Inst., Inc.*,
 No. 11-cv-3422-JKB, 2012 WL 3638778  (D. Md. Aug. 22, 2012)........................ 17

*United States v. $2,200,000 in U.S. Currency*,
 No. 12-cv-3501-ELH, 2014 WL 1248663 (D. Md. Mar. 26, 2014) ........................ 17

*Veney v. Wyche*,
 293 F.3d 726 (4th Cir. 2002)..................................................................................... 18

*Wallace v. Kato*,
 549 U.S. 384 (2007) .................................................................................................. 12

*Wershe v. Combs*,
 763 F.3d 500 (6th Cir. 2014)............................................................................... 10, 19

*Whiteman v. Chesapeake Appalachia, L.L.C.*,
 729 F.3d 381 (4th Cir. 2013)..................................................................................... 28

*Whiteside v. United States*,
 775 F.3d 180 (4th Cir. 2014).................................................................................. 13, 14

*Wilkinson v. Dotson*,
 544 U.S. 74 (2005) ................................................................................................. 9, 10

*Wilson v. Garcia*,
 471 U.S. 261 (1985) .................................................................................................. 11

*Wolff v. McDonnell*,
 418 U.S. 539 (1974) ........................................................................................ 8, 9, 10, 11

**Statutes**

28 U.S.C. 2255 ............................................................................................................... 13, 14

28 U.S.C. 2255(f) .................................................................................................................. 14

28 U.S.C. 2255(f)(4) ............................................................................................................. 14

42 U.S.C. § 1983 ............................................................................................................. 11, 14

42 U.S.C. § 1997e(a) ...................................................................................................... 31, 33

42 U.S.C. § 1997e(h) ............................................................................................................ 32

42 U.S.C.A. § 1983 ............................................................................................................... 11

**Other Authorities**

10B Charles A. Wright et al., Federal Practice & Procedure § 2741 (3d ed. 1998) .................... 29

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ............................................................................. 11

Md. Code, Cor. Serv. § 7-301(d)(4) ......................................................................................... 7

Md. Code. Cor. Serv. § 7-101(d) .......................................................................................... 30

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 3, 6, 16, 32

Fed. R. Civ. P. 12(d) ............................................................................................................ 28

Fed. R. Civ. P. 56(d) ............................................................................................................ 31

Fed. R. Civ. P. 8(a) .............................................................................................................. 16

Fed. R. Civ. P. 8(a)(2) .......................................................................................................... 16

## INTRODUCTION

Plaintiffs Maryland Restorative Justice Initiative ("MRJI") and MRJI members Calvin McNeill, Kenneth Tucker and Nathaniel Foster filed this suit challenging Defendants' operation of a parole scheme that fails to afford individuals serving parole-eligible life sentences for offenses committed as youth a meaningful and realistic opportunity for release as required by the Eighth Amendment.[1]  The thrust of Plaintiffs' Complaint is that Defendants are responsible for a scheme that calls itself "parole," but that operates in practice as a system of executive clemency in which opportunities for release are extremely rare and no one is ever paroled.  Plaintiffs contend that this scheme runs afoul of recent landmark decisions of the United States Supreme Court establishing new Eighth Amendment limits barring life without parole ("LWOP") for all but the rarest youth.

Out of more than 200 parole-eligible juvenile lifers in Maryland, most of whom are MRJI members, *no one* has been paroled in the last twenty years.  Compl. ¶¶  58; 64, 74, 119.  Indeed, out of the entire population of 2,000 people serving parole-eligible life sentences in Maryland, *only 24* have even been recommended for parole during this 20-year period, and *every person but one has been denied parole*, without any explanation.  Compl. ¶¶ 115-118.  This is so, in large part, because only the Governor may parole any lifer—and the Governor may deny parole for any reason at all, without any standards, explanation, or opportunity for review.  Compl. ¶¶ 70-80; 105-114.  Moreover, various practices of the Maryland Parole Commission ("MPC") – responsible for recommending individuals for parole – and the Division of Correction ("DOC") – responsible for rehabilitating individuals to prepare them for release – have morphed into a

---

[1] To the extent it is not explicit from the face of the Complaint, Mr. Foster is serving a parole-eligible life sentence and this suit is brought exclusively on behalf of individuals serving parole-eligible life sentences.

support system for Maryland's de facto scheme of executive clemency by creating barriers to any parole opportunity juvenile lifers may have in theory.  Compl. ¶¶ 81-90; 91-103; 104; 111; 113.

Nonetheless, even within this broken system, members of MRJI, including the named plaintiffs in this case who have now spent three or more decades incarcerated for offenses committed as teenagers, have made heroic efforts to demonstrate their rehabilitation.  Compl. ¶¶119-166.  At various points, they, like other MRJI members, lost all hope of release because of the apparent futility of the parole process, demonstrating exactly the type of absence of hope that the Supreme Court's decisions have decried.  Compl. ¶¶ 142, 165.  For decades, the men and women of MRJI have earned notations in their files that (i) they *deserve* to progress to lesser security levels, (ii) they are *excellent* candidates for release, and (iii) they have demonstrated *exceptional* character within prison walls, and yet have they been denied any meaningful hope of release except through rare grants of clemency.  Compl. ¶¶ 124, 132, 140-41, 156.  This is precisely what is forbidden by the Eighth Amendment.

## SUMMARY OF ARGUMENT

Defendants raise five arguments in their futile attempt to convince this Court to dismiss Plaintiffs' Complaint.  As discussed below, none of the arguments has any merit and each can be easily rejected by this Court.

Even more troubling, Defendants introduced more than 70 pages of improper new factual allegations and supporting exhibits (claiming that they are "undisputed" when plainly they are disputed), and knowingly have made arguments supporting a grant of summary judgment that have no possibility of being sustained because Plaintiffs have not had any opportunity for discovery.  This has unduly burdened the Plaintiffs – represented by public interest lawyers and

*pro bono* counsel – with having to undertake unnecessary work to respond to illegitimate arguments.

It has been settled, black-letter law in this Circuit for more than four decades that (i) a motion to dismiss grounded upon Federal Rule 12(b)(6) that includes facts other than those contained in the Complaint must be converted into a motion for summary judgment under Rule 56, and (ii) motions to dismiss under Rule 12(b)(6) absolutely cannot be converted into a motion for summary judgment without the plaintiff having a "reasonable opportunity for discovery." *Bailey v. Va. High School League, Inc.*, 488 F. App'x 714, 716 (4th Cir 2012) ("*Bailey*"); *E. I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011) ("*E. I. du Pont de Nemours & Co.*"); *Gay v. Wall*, 761 F.2d 175, 178 (4th Cir. 1985) ("*Gay*"); *Johnson v. RAC Corp.*, 491 F.2d 510, 514 (4th Cir. 1974) ("*Johnson*"). Simply stated, converting a motion to dismiss grounded upon Rule 12(b)(6) into a motion for summary judgment without giving the plaintiff a reasonable opportunity for discovery is improper, reversible error and has been for the past 42 years. *Id*. at 515.

Defendants must be charged with knowledge of this settled rule of law. They also indisputably are aware that they haven't even filed an Answer in this matter, let alone allowed Plaintiffs the opportunity for discovery. Notwithstanding the fact that they have yet to file an Answer or to permit Plaintiffs any discovery, Defendants spent a significant portion of their 52-page, overly-long brief on presentation of new, clearly disputed facts and arguments for summary judgment (including exhibits seeking court recognition of new facts) in flagrant disregard for Fourth Circuit precedent. The Court (i) should not tolerate Defendants' knowing abuse of Federal Court Rules and process, (ii) should counsel Defendants accordingly, and (iii) should strike the new facts, supporting exhibits and offending portions of Defendants brief.

As for the substantive merit of the Defendants' arguments – there is none.

First, while Defendants erroneously argue that *Heck v. Humphrey*, 512 U.S. 477 (1994) ("*Heck*") requires dismissal, courts consistently have held – both in cases cited and those omitted by the Defendants – that *Heck* only applies when the judgment demanded by the plaintiff would "necessarily imply" the invalidity of his sentence. Defendants cannot meet that standard because Plaintiffs undeniably do not seek relief in the form of alteration of the sentence of any Plaintiff. This renders *Heck* inapplicable on its face. Moreover, Defendants ignore here – as they ignore throughout their Motion – that the lead plaintiff in this case is MRJI, an entity that sues on behalf of its members, but clearly is not an individual seeking direct relief from a imposed sentence.[2]

In any event, as this Court has already recognized, "plaintiffs have challenged the constitutionality of the Maryland parole system as applied to Juvenile Offenders, but they have not challenged the particular sentence of any Juvenile Offender." Aug. 30, 2016 Mem. Op. at 16-17. Indeed, Plaintiffs are asking the Court to hold that Maryland's parole scheme is unconstitutional as applied to juvenile lifers, and that a new, constitutional scheme must be created. Once the new parole scheme is in place, individual plaintiffs would have the right – just like every other prisoner in similar circumstances – to have their parole eligibility determined under that new scheme. As a matter of law, a judgment in this case on behalf of Plaintiffs would not imply anything whatsoever about individual Plaintiffs' sentences, let alone "necessarily imply" that those sentences were invalid. *Heck* does not apply here and the Motion To Dismiss on this ground must be denied.

Second, Defendants err in arguing that Plaintiffs' action is barred by the statute of limitations. The Fourth Circuit, adopting the generally-accepted rule, has determined that a

---

[2] Defendants have not challenged MRJI's standing to make this claim, as the group clearly has standing to represent its members under Fourth Circuit precedent.

Section 1983 claim begins to accrue for purposes of the applicable statute of limitations when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *A Society Without a Name v. Va.*, 655 F.3d 342, 348 (4th Cir. 2011) ("*Society*") (internal quotation marks omitted.)   As the Supreme Court has stated, this means that the statute of limitations does not begin to accrue until "'the plaintiff can file suit and obtain relief.'"  *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) ("*Cooey") quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 201 (1997) ("*Bay Area Laundry and Dry Cleaning Pension Trust")*.  Plaintiffs' Complaint challenges the constitutionality of Maryland's parole scheme for juvenile offenders serving life sentences.  Plaintiffs had no legally recognized injury and no possibility of relief prior to the Court's decision in *Montgomery v. Louisiana*, 577 U.S. __, 136 S. Ct. 718 (2016) ("*Montgomery")* which made retroactive its ruling that juvenile offenders must have a meaningful opportunity for release, and the statute of limitations therefore did not begin to run until *Montgomery* was decided in 2016.  Defendants' argument that Plaintiffs were required to bring their action before they had any legally cognizable right to do so would render the retroactivity determination of *Montgomery* a nullity in utter defiance of the Supreme Court's edict.

Furthermore, contrary to Defendants' assertions, Plaintiffs do not complain of a single illegal act with continuing ill effects, but rather a series of acts that represent continuing and repeated violations of their rights as each individual Plaintiff and MRJI member is denied a meaningful and realistic opportunity for release through the practices cited in the Complaint.

Thus, even under Defendants' erroneous statute of limitations theory, Plaintiffs' claims fall plainly within the continuing harm exception.[3]

Third, Defendants' 12(b)(6) "plausibility" arguments are downright disingenuous.  There can be no question that the detailed factual allegations in the Complaint meet the Supreme Court's and this Circuit's requirement that Plaintiffs set forth a factual predicate which, if proven, establishes a cognizable claim of injury under *Montgomery*.  Defendants' contention that Plaintiffs' have failed to state a legal claim is contradicted by overwhelming legal authority establishing that Plaintiffs' have stated viable legal claims.  Defendants also dispute the facts alleged in the Complaint and assert that the State already provides adequate protection for the rights of juvenile offenders.  However, this is precisely the sort of factual dispute that requires further proceedings before this Court.  It certainly cannot be sustained as a basis upon which to dismiss the Complaint.

As discussed above, the Court cannot consider Defendants' summary judgment arguments because there has been no opportunity for discovery in this case.  That said, Defendants' assertions simply underscore the factual disputes that require this case to be litigated and, if anything, indicate that Plaintiffs will be able to fully flesh out their claims through additional discovery.  Defendants basically argue, first, that, because several individuals were released after their sentences were *commuted*, juvenile lifers have indeed been "paroled," and second, that their current procedures, in conjunction with proposed amendments they are considering, are sufficient to protect the constitutional right of juvenile offenders serving life sentences to a "meaningful opportunity for release."  Plaintiffs' Complaint directly challenges

---

[3] Even if this were not the case, Defendants' statute of limitations argument fails to address the claims of MRJI, which represents juvenile offenders sentenced to life without a meaningful opportunity for parole at all times, including times within the three years preceding filing of this action.

this position and Plaintiffs are entitled to discovery to develop admissible evidence to prove their case.

Fifth and finally, Defendants' claim that Plaintiffs are somehow subject to mandatory exhaustion of remedies through the Maryland Prison Litigation Reform Act (the "Act") for their challenges pertaining to DOC classification cannot be raised at the Motion to Dismiss stage, as Plaintiffs are under no obligation to plead exhaustion of any administrative remedies in their Complaint. In any event, the PLRA does not apply to MRJI because it is not an incarcerated person, and administrative remedies to challenge classification decisions are unavailable to the named plaintiffs and all other individuals incarcerated in the DOC.

**ARGUMENT**

**I.    PLAINTIFFS' ACTION SEEKS STATUTORY AND PROCEDURAL REFORMS, AND IS PROPERLY BROUGHT TO THIS COURT UNDER SECTION 1983**

Defendants acknowledge, as they must, that "plaintiffs do not seek immediate release from confinement" in this action. Opposition at 18. Rather, Plaintiffs challenge the constitutionality of the Maryland parole scheme to which they are subject, and seek this Court's declaration that (i) the parole scheme is unconstitutional as applied to them; (ii) they are, as a result, being subjected to *de facto* life without parole; and (iii) Maryland cannot continue to subject them and other juvenile lifers to this unconstitutional parole system.[4]    They seek the

---

[4] Plaintiffs seek the following remedies, none of which seeks a change in the sentence or period of incarceration of any Plaintiff:  (i) declaration that Defendants "operated, and continued to operate," a parole scheme that denies individuals, such as Plaintiffs a "meaningful and realistic opportunity for release;"  (ii) declaration that Plaintiffs are "serving *de facto* life without parole sentences;"  (iii) declaration that Maryland Code, Correctional Services Article § 7-301(d)(4) granting the Governor the exclusive authority to approve parole for juvenile lifers is unconstitutional; (iv) declaration that Defendants' reliance upon certain risk assessment tools unconstitutionally restricts Plaintiffs realistic and meaningful opportunities for release;  (v) declaration that Plaintiffs unconstitutionally have been deprived access to rehabilitative opportunities as a result of Defendants policies and practices;  (vi) declaration that Maryland criminal law unconstitutionally fails to require that youth status be taken into account in determination of sentences where life in prison is a possibility; (vii) an injunction preventing Defendants from continuing their

opportunity to be judged under a constitutional parole scheme that gives them a "meaningful opportunity to obtain release" as required under *Montgomery* and *Miller v. Alabama*, 567 U.S. ____, 132 S. Ct. 2455, 2469 (2012) ("*Miller*") (*quoting Graham v. Florida, 560 U.S. 48, 75 (2011) ("Graham").*

With this factual record, Defendants assert that the Supreme Court's ruling in *Heck* applies, and that Plaintiffs' request for a declaration that they have become subject to *de facto* and unconstitutional life without parole must be dismissed. However, Defendants fail to acknowledge that a long line of unchallengeable case precedent has rejected their position, and placed the legitimacy of Plaintiffs' action under Section 1983 beyond any reasonable dispute. Defendants' motion to dismiss therefore must be denied.

This case is controlled by *Wolff v. McDonnell*, 418 U.S. 539 (1974) ("*Wolff*") (not addressed by Defendants), and its progeny, which establish beyond any reasonable opposition that prisoner's rights actions under Section 1983 are cognizable where, as here, they challenge statutory requirements and administrative procedures imposed upon prisoners without directly seeking reductions in sentences. In *Wolff*, the Supreme Court held that challenges to procedures used to deprive prisoners of good time credits could be properly brought under Section 1983. The Court distinguished claims for damages and demands for procedural reform from claims to have credits directly restored, holding that the damages and procedural reform claims "were properly before" the court even though the demand for restoration of credits was not:

> [H]abeas corpus is not an appropriate or available remedy for damages claims, which, if not frivolous and of sufficient substance to invoke the jurisdiction of the federal court, could be pressed

---

unconstitutional activities and requiring Defendants to grant juvenile lifers a meaningful and realistic opportunity to demonstrate their readiness for release;  (viii) award of attorneys' fees;  (ix) grant of such other and further relief as the Court deems just and proper.

> under 1983 along with suits challenging the conditions of confinement rather than the fact or length of custody.
>
> . . .
>
> We therefore conclude that it was proper for the Court of Appeals and the District Court to determine the validity of the procedures for revoking good-time credits and to fashion appropriate remedies for any constitutional violations ascertained, short of ordering the actual restoration of good time already canceled.

*Wolff*, 418 U.S. at 554-55. [5]

In *Wilkinson v. Dotson*, 544 U.S. 74 (2005) ("*Wilkinson*"), the Supreme Court amplified that the restrictions of habeas corpus proceedings apply only where a prisoner both "challenges 'the fact or duration of his confinement' and seeks either 'immediate release from prison,' or the 'shortening' of his term of confinement." *Wilkinson,* 544 U.S. *at 78.*   (citations omitted). According to the Court, "Section 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner." *Wilkinson,* 544 U.S. at 81 (original emphasis).  The Court sustained the right of the prisoners in *Wilkinson* to bring their action under Section 1983 because the prisoners there, like Plaintiffs here, (i) sought relief that would render the state procedures used to deny them parole invalid and (ii) did not seek an injunction ordering immediate or speedier release into the community. Rather, as here, success "means at most new eligibility review, which at most will speed *consideration* of a new parole application."   *Id,* at 82 (original emphasis).  In sum, as reflected in the concurring opinion of Justice Scalia (*Heck's* author), *Heck* did not apply "because neither prisoner's claim would necessarily spell speedier" release.  *Id.*[6]

---

[5] Defendants cite *In Re Wright*, 826 F.3d 774, 779 (2016) ("*Wright*") as somehow supporting their position. Opposition at 20.  In fact, *Wright* supports Plaintiffs' position that prisoner challenges to parole board procedures cannot be brought as habeas corpus proceedings.

[6] In *Heck*, Justice Scalia underscored that prisoner cases challenging parole procedures could properly be brought under § 1983:

A long line of federal court cases have cemented the holding in *Wilkinson* and have allowed claims challenging the constitutionality of state parole schemes to proceed under Section 1983.  For example, in *Hayden v. Keller*, 134 F. Supp. 3d 1000 (E.D.N.C. 2015), 2016 WL 4073275  (4th Cir. N.C., Aug. 01, 2016) (dismissing appeal), the court entertained under Section 1983 the assertion of juvenile lifers that North Carolina parole procedures did not offer a "meaningful opportunity" for parole.  Applying Supreme Court and Fourth Circuit precedent, the court not only allowed the proceeding to move forward but actually found that "the current North Carolina parole review process for juvenile offenders serving a life sentence violates the Eighth Amendment," and ordered the state to explore "means and mechanisms for compliance."  *Id.* at 1011.  *See Hill v. Snyder*, 821 F.3d 763 (6th Cir. 2015) (court allowed proceeding under Section 1983 to determine if newly implemented parole scheme met requirements of *Miller* and *Montgomery*); *Wershe v. Combs*, 763 F.3d 500, 504 (6th Cir. 2014) ("*Wershe*") ("Because 'success in [his] § 1983 claim would not necessarily affect the duration of his sentence because prison officials would retain discretion regarding whether to grant him parole,' the habeas exception does not bar *Wershe's* § 1983 claim"), *quoting Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007); *Greiman v. Hodges*, 79 F. Supp. 3d 933 (S.D. Iowa 2015) (court allowed proceeding under Section 1983 to determine if available education programs and existing parole procedures were sufficient to give a juvenile lifer a meaningful opportunity for parole); *Cunio v. Brown*, 2015 WL 3407883, D. Or., May 27, 2015, *quoting Wilkinson*, 544 U.S. at 82-84 ("a plaintiff may

----

In light of the earlier language characterizing the claims as one "of damages for the deprivation of civil rights," rather than damages for the deprivation of good time credits, we think this passage recognized a § 1983 claim for using the wrong procedures, not for reaching the wrong result (*i.e.*, denying good time credits).  Nor is there any indication in the opinion [in *Wolff*], or any reason to believe, that using the wrong procedures necessarily vitiated the denial of good time credits.  Thus, the claim at issue in *Wolff* did not call into question the lawfulness of the plaintiff's continuing confinement.

*Heck,* 512 U.S. at 482-83.

bring claims regarding the conditions of his confinement, or the procedures relating to a parole decision, under 42 U.S.C. § 1983") *Cunio* at *6.[7]

This case falls squarely within the category of actions identified by *Wolff* and its progeny that appropriately seek changes to unconstitutional statutes and procedures through the instrument of Section 1983.  The fact that individual Plaintiffs subsequently will be eligible for relief as a result of those changes does not convert their action to one directly seeking a change in the term of their confinement.  Therefore, Defendants' assertion that habeas exhaustion requirements should apply is erroneously made and should be rejected.

## II.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Defendants' flawed statute of limitations argument rests upon two basic questions:  (i) what is the period of the statute of limitations for Plaintiffs' claims; and (ii) when did the Plaintiffs' claims accrue.  The answer to the first question is three years.  Plaintiffs bring their claims under 42 U.S.C.A. § 1983 ("Section 1983"), and Section 1983 claims are governed by a forum state's personal injury statute of limitations.  *Wilson v. Garcia*, 471 U.S. 261, 265 (1985).  Under Maryland law, the statute of limitations for general personal injury is three years.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.

---

[7] Defendants' reference to *Edwards v. Balisok*, 520 U.S. 641 (1997)("*Balisok*"), clearly is off-point.   *Balisok* involved allegations of deceit and bias with respect to a specific disciplinary proceeding that "would, if established, necessarily imply the invalidity" of the discipline imposed upon the prisoner (loss of good-time credits).  *Id.* at 646.  Here, in stark contrast, individual plaintiffs seek (i) a finding that by virtue of Maryland's unconstitutional parole system they are being subject to an unconstitutional life without parole sentence, and (ii) the opportunity for eligibility for parole under a constitutionally-valid system.  Whether Plaintiffs ultimately are granted parole under a legally-valid process will be determined in another proceeding on another day – it certainly is not "necessarily implied" from a finding that the current parole process in Maryland for juvenile lifers is unconstitutional.

Defendants' citation of *Dist. Att'y's Office for Third Judicial Dist. v.Osborne*, 557 U.S. 52 (2009) is similarly inapt.  Opposition at 20.  In that case, the Supreme Court was dealing with a prisoner action seeking exculpatory evidence in the underlying criminal proceeding.  *Osborne* has nothing in common with the issues before the court here.

The crucial inquiry, however, is "when did Plaintiffs claims begin to accrue?" Defendants erroneously argue that the accrual date was "as early as 1995" (when Governor Glendenning stated "life means life" in the state of Maryland), and as late as the various dates that Defendants' assert Plaintiffs' had knowledge that their personal parole applications would not be approved.  The core of Defendants' argument is that Plaintiffs "had ample opportunity" to "comprehend and act upon their cause of action long before" the Supreme Court's ruling in *Montgomery* established that juvenile offenders had a legally cognizable right to challenge parole schemes that did not offer a "meaningful" and "realistic" opportunity for release.  In other words, Defendants argue the statute of limitations began to accrue *before* changes in constitutional law established that Plaintiffs had the rights that they assert are being violated by the State of Maryland, and therefore before Plaintiffs suffered any legally cognizable injury.[8]

Defendants' astounding position – that Plaintiffs were required for purposes of statute of limitations inquiry to anticipate the Supreme Court's change in law with respect to parole availability for juvenile offenders with life sentences – makes a mockery of the Supreme Court's instructions that the statute of limitations does not begin to run until (i) "the plaintiff has a complete and present cause of action," *Wallace v. Kato*, 549 U.S. 384, 388 (2007), (ii) "the plaintiff knows or has reason to know of his injury," *Cooey,* 479 F.3d at 416, and (iii) "'the plaintiff can file suit and obtain relief,'" *id.*, *quoting Bay Area Laundry and Dry Cleaning,* 522 U.S. at  200.  *See also Society* (Section 1983 claims accrue "when [a] plaintiff 'knows or has

---

[8] Defendants also would have Plaintiffs file suit before the issue was ripe—that is, whether, in fact, there was sufficient evidence showing that Maryland's parole scheme was consistently denying lifers any opportunity for parole.  *See Lomax v. Warden*, 356 Md. 569, 741 A.2d 476, 482-83 (MD. 1999), in which the Maryland Court of Appeals recognized that prisoners were entitled to "file an appropriate action in court" if, over the passage of time, they failed to receive lawful parole consideration,

reason to know of the injury which is the basis of the action,'"), *quoting Fox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975).

Plaintiffs' claims in this action are based on a series of decisions by the United States Supreme Court holding that LWOP for juveniles is unconstitutional except for the "rare juvenile whose crime reflects irreparable corruption." *Montgomery,* 136 S.Ct. at 734. Under *Montgomery*, decided on January 25, 2016, this substantive constitutional rule was made retroactive. Accordingly, January 25, 2016, is when Plaintiffs had reason to know that they had suffered injury cognizable in a court of law.[9] *See Society,* 655 F.3d at 348. Prior to *Montgomery*, Plaintiffs could not have known that they had suffered a cognizable injury because they had no reason to know that the Supreme Court's holdings regarding LWOP for juveniles had retroactive application. Acceptance of Defendants' position would render null the directive of the Supreme Court in *Montgomery* that the rulings in *Miller* be given retroactive effect for the benefit of juvenile offenders with long-standing prison terms. Accordingly, Plaintiffs have three years from January 25, 2016, to pursue these Section 1983 claims.

Defendants' reliance on *Whiteside* is as misplaced as it is inapposite. *Whiteside v. United States,* 775 F.3d 180 (4th Cir. 2014) ("*Whiteside*"). *Whiteside* involved a motion to attack the validity of a specific sentence pursuant to 28 U.S.C. 2255. Unlike the case here with respect to Section 1983 actions, claims under 28 U.S.C. 2255 are subject to a Congressionally-specified statute of limitations regime, with respect to which the statute of limitations begins to run when the latest of one of four conditions takes place:

---

[9] In *Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259 (11th Cir. 2003) and *Lovett v. Ray*, 327 F.3d 1181 (11th Cir. 2003) (Defendants Br. at 29-30), the parole hearing dates subject to challenge violated the law when they were imposed, and the prisoner-plaintiffs were deemed to have been aware of their injury at the time the dates were set. Here, *Graham* and *Miller* created new law rendering formerly lawful acts unlawful and *Montgomery* made its earlier decisions retroactive. Thus, Plaintiffs cannot be found to have been aware of any injury until after the ruling in *Montgomery*.

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Whiteside*, 775 F.3d at 182-83 (*citing* 28 U.S.C. 2255(f)).

The prisoner in *Whiteside* argued that a newly-decided Court of Appeals decision constituted a "new fact" under 28 U.S.C. 2255(f)(4) and that he filed his petition within a year of that decision. This argument was rejected based upon the court's construction of Section 2255 and its finding that a change in law did not qualify as a "new fact" under the statute. *Id.*

In stark contrast here, Plaintiffs' are pursuing their claims under Section 1983, which does not have a Congressionally-mandated statute of limitations regime, and a Supreme Court edict that its decision for the benefit of juvenile offenders be given retroactive effect.[10] As explained in Section I, Plaintiffs want the opportunity to be judged under a constitutional parole scheme that provides "a meaningful opportunity for parole" pursuant to *Montgomery* and *Miller*; they are not challenging a specific parole hearing result. Plaintiffs' claim that the Maryland parole scheme violates the constitutional rights of juvenile offenders serving life sentences became ripe on January 25, 2016, when *Montgomery* established that all juvenile offenders

---

[10] Defendants cite numerous cases at p. 26-28 of their brief that all relate to the statute of limitations regime established by Congress with respect to Section 2255 sentencing change claims. For the reasons discussed above, those cases do not apply here under Section 1983 and the retroactive effect requirements under *Montgomery*.

suffer constitutional injury if they do not have a reasonable opportunity for parole, and Plaintiffs'

claims are squarely filed within the statute of limitation period of three years.

Even assuming, *arguendo*, that a statute of limitations argument could be made with

respect to the rights of any specific juvenile offender, the Complaint adequately alleges a

continuing violation.  As explained by the Court in *Society*, 655 F.3d at 348 (*quoting Nat'l*

*Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166–67 (4th Cir. 1991):

> 'In general, to establish a continuing violation[,] the plaintiff must establish that the
> unconstitutional or illegal act was a fixed and continuing practice.' In other words, if the
> plaintiff can show that the illegal act did not occur just once, but rather 'in a series of
> separate acts [,] and the same alleged violation was committed at the time of each act,
> then the limitations period begins anew with each violation.')

*See Scott v. Clark*, 42 F. Supp. 3d 813 (W.D. Va. 2014) (applying *Society* standard and

concluding that because the plaintiffs alleged continuing denials of proper medical care

continuing into the limitations period, dismissal was improper).

Defendants misconstrue Plaintiffs' description explaining how Maryland's scheme has

gradually evolved into the system of clemency it is today to be an allegation that the only

violations of their rights occurred when the system *began* shifting towards clemency through

Governor Glendening's announcement of his disinclination to parole any lifer in 1995.  Compl.

¶¶ 104-118.  The Court of Appeals in *Lomax* explicitly rejected the argument that then-Governor

Glendening had announced a new rule that could be challenged, instead observing that all the

Governor did was describe how *he* intended to exercise his discretion at that moment in

time.  *See Lomax v. Warden, Maryland Corr. Training Ctr.*, 356 Md. 569, 577 (1999).  Instead,

Plaintiffs' contention is that Maryland's scheme has developed, over time, to be the *de facto*

system of clemency it is today, and it will continue to operate in that manner in the future unless

legal intervention forces it to change.

15

In this case, as with the case of a prisoner denied adequate medical care, while Plaintiffs' rights may have been violated decades ago, there are violations that occur with each separate act that works to deny juvenile lifers a meaningful and realistic opportunity for release—through the improper practices in parole hearings, risk assessments, re-classification decisions, denials of access to critical information, and the like.  Indeed, to the extent that Plaintiffs are successful in this action in showing the Maryland parole scheme is unconstitutional, the law would not allow that unconstitutional scheme to continue to be applied to a class of prisoners on the premise that they somehow had lost a right to challenge the scheme as a matter of statute of limitations.

## III.    PLAINTIFFS HAVE ASSERTED COGNIZABLE LEGAL CLAIMS AND ALLEGED SPECIFIC FACTS SUFFICIENT TO SUPPORT THEM

### A.    Standard of Review

A party seeking dismissal under Fed. R. Civ. P. 12(b)(6) must show that, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  All complaints must meet the "simplified pleading standard" of Rule 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  As stated by the Supreme Court, all that is required in the complaint is that the plaintiff state "simply, concisely, and directly events that, they allege[], entitle[] them to damages."  *Johnson v. City of Shelby,* Miss.*,* 135 S. Ct. 346, 347.

To determine whether a complaint meets this standard, a court first must divide genuine factual allegations, which must be treated as true, from "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009), quoted in, *e.g., Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013).  Next, the court must "assume [the] veracity [of the genuine factual allegations] and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  A complaint will survive when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.* at 678.  A court must "draw on its judicial experience and common sense" to determine whether a reasonable inference can be made, and thus whether the pleader has stated a plausible claim for relief. *Id.* at 679.

A court may not "consider extrinsic evidence" supplementing those allegations, unless that evidence consists of documents that are attached to or incorporated into the complaint, "integral to the complaint," and "authentic." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir.2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir.2006)).  Declarations, affidavits, and other statements are among the evidence excluded from consideration if not attached or incorporated to the complaint or not integral to the complaint. *See, e.g., United States v. $2,200,000 in U.S. Currency*, No. 12-cv-3501-ELH, 2014 WL 1248663, at *9 (D. Md. Mar. 26, 2014) (declining to consider statements of scientists in motion to dismiss) (also citing cases); *Trotter v. Kennedy Krieger Inst., Inc*., No. 11-cv-3422-JKB, 2012 WL 3638778, at *5 (D. Md. Aug. 22, 2012) (declining to consider a declaration in deciding a motion to dismiss).

If "the motion to dismiss involves 'a civil rights complaint, [a court] must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Hall v. Burney*, No. 11-6566, 2011 WL 5822176, at *1 (4th Cir. Nov. 18, 2011) (quoting *Edwards*, 178 F.3d at 244); *accord Slade v. Hampton*

17

*Roads Reg'l Jail*, 407 F.3d 243, 248 (4th Cir. 2005) (same); *Veney v. Wyche*, 293 F.3d 726, 730

(4th Cir. 2002) (same).  Moreover, and especially significant in this case, novel legal claims

based on new developments in the law should be heard rather than dismissed outright.  *See*

*Greiman v. Hodges*, 79 F.Supp.3d 933, 945-46 (S.D. Iowa 2015) (describing Eighth Amendment

challenge to denial of meaningful opportunity for release as novel legal claim meriting

"discovery and full consideration of the case on the merits.")

### B.    Plaintiffs Have Sufficiently Pled The Basis For Their Contention That States Must Afford Juveniles A Meaningful And Realistic Opportunity For Parole.

Plaintiffs have alleged that juvenile offenders serving life sentences in Maryland are

being denied their constitutional right to a "meaningful opportunity for release because (i)

Maryland's "parole" scheme operates as a system of executive clemency in which opportunities

for release are rare; and (ii) Defendants' policies and practices deny juveniles serving life

sentences a meaningful and realistic opportunity for release.  Defendants contend that these are

not legally viable claims.  They argue that the Supreme Court cases forbidding life without

parole for juveniles except in the rarest cases have no application outside sentencing

proceedings.  Defendants further contend that, to the extent these cases apply outside sentencing,

they have no bearing on what kind of parole scheme is legally sufficient and all that is required

to survive Eighth Amendment scrutiny is "consideration for parole at some point during an

individual's natural life."  Defendants are mistaken and their Motion must be denied.

Defendants' contentions that Plaintiffs have failed to state viable legal claims are belied

by the fact that federal courts have repeatedly recognized that juvenile lifers may raise an Eighth

Amendment claim based on the denial of a meaningful and realistic opportunity for release in a

Section 1983 action.  *See, e.g., Greiman v. Hodges*, 79 F. Supp. 3d 933, 943 (S.D. Iowa 2015)

(denying Motion to Dismiss in Section 1983 action alleging Eighth Amendment violation for

denial of meaningful opportunity for release); *Hayden*, 134 F. Supp. 3d at 1009; (denying

Motion for Summary Judgment in Section 1983 case alleging denial of meaningful opportunity

for release on parole); *Hill*, 821 F.3d 763 (remanding Section 1983 case for further proceedings

including opportunity for plaintiffs to allege legislative remedy providing for parole as early as

25 years inadequate and inviting court to certify class in light of defendants' recalcitrance to

remedy); *Wershe,* 763 F.3d 500 (vacating dismissal of Eighth Amendment claim for denial of

meaningful and realistic opportunity for release in Section 1983 action of *pro se* plaintiff serving

parole-eligible life sentence, and acknowledging the novelty of the prisoner claims).

 Plaintiffs' claims arise from a series of cases starting with *Graham v. Florida*, 560 U.S.

48 (2010) (*"Graham"*) and *Miller*, which establish that the question of whether juvenile lifers

have been denied a meaningful and realistic opportunity for release is a fact-specific inquiry

under a substantive standard with teeth, and culminating in *Montgomery*, which made the rulings

retroactive for the benefit of all juvenile offenders serving life sentences.

 Writing for the Court in *Graham*, Justice Kennedy made clear that the line between an

LWOP and non-LWOP sentence is whether it ensures a "meaningful opportunity for release

based on demonstrated maturity and rehabilitation." *Id.* at 75; 82; *see also Montgomery,* 136

S.Ct. at 736-37 (juvenile lifers "must be given the opportunity to show their crime did not reflect

irreparable corruption; and, if it did not, their hope for some years of life outside prison walls

must be restored"). The Court emphasized that this "opportunity" begins before consideration

for release in the opportunities afforded juveniles during the course of their incarceration to

demonstrate their rehabilitation. *Graham* at 75 (noting that in some institutions, "the system

itself becomes complicit in the lack of development" by precluding juveniles from accessing

programs solely on the basis of their ineligibility for parole). Moreover, and particularly relevant

to this case, those juvenile offenders who are entitled to a "meaningful opportunity for release" under the Constitution cannot have their rights abridged through provision of the wholly subjective and political tool of clemency. *Graham* at 70 (The "remote possibility of [clemency] does not mitigate the harshness of the sentence.") (*citing Solem v. Helm*, 463 U.S. 277, 300-301 (1983). *Solem* described parole as "a regular part of the rehabilitative process"; "the normal expectation in the vast majority of cases"; governed by explicit "standards and procedures"; and subject to a certain degree of "predict[ability]." *Id.* Further, commutation "is an ad hoc exercise of executive clemency. A Governor may commute a sentence at any time for any reason without reference to any standards." *Id.*

These are precisely the nature of Plaintiffs' contentions in this case – that rather than a system of parole, Defendants operate a system that functions in practice as a system of clemency which denies juvenile lifers a meaningful opportunity for release.

Against this backdrop, Defendants' arguments regarding the legal insufficiency of Plaintiffs' claims border on the frivolous. Defendants' contention that the holdings of *Miller*, *Graham* and *Montgomery* have no application outside of criminal sentencing are absolutely without merit.[11] The fact that courts have been compelled to consider the ramifications of the Court's decisions for sentencing proceedings does not mean that the decisions are limited to sentencing. *See Montgomery,* 136 S.Ct. at 729 (explaining that when a court pronounces a substantive constitutional rule regarding criminal punishment, as in *Miller*, it means that "the Constitution itself deprives the State of the power to impose a certain penalty.") (quotation marks

---

[11] Defendants' only legal authorities for this argument are cases in which individual criminal defendants challenged the adequacy of consideration of youth in sentencing on appeal or in post-conviction proceedings, none of which even attempt to address the question of a meaningful opportunity for release. *See* Defs Mem. at 36, citing *People v. Gutierrez*, 324 P.3d 245 (Cal. 2014) (considering whether statute created impermissible presumption of LWOP); *People v. Holman*, __ N.E.3d ___, 2016 WL 868413 (Ill. App. Ct 2016) (considering requisite scope of consideration of Miller factors in sentencing); *State v. Long*, 8 N.E.3d 890 (Ohio 2014) (establishing certain requirements at sentencing of juveniles).

and citation omitted); *Hawkins v. NY State Dep't of Corr. & Comty. Supervision*, 140 A.D.3d 34 (N.Y. App. Div. 2016) ("A parole board is no more entitled to subject an offender to the penalty of life in prison in contravention of this rule (under *Miller*) than is a legislature or sentencing court.").

Further, Defendants largely, and wrongly, ask the Court at this very early stage of proceedings – before Defendants even file an Answer – to weigh the merits of the case rather than simply to determine if Plaintiffs have sufficiently stated a case.  For example, Defendants seek to engage in the argument whether the Eighth Amendment requires anything more than a nominal right to parole and that the actual outcomes of parole are irrelevant.  *Compare* Defs. Br. at 39 ("Here, the plaintiffs have received consideration for parole, and that is all the Supreme Court decisions require") with *Greiman v. Hodges,* 79 F.Supp.3d. at 944-45 ("[A]lthough *Graham* stops short of guaranteeing parole, it does provide the juvenile offender with substantially more than a *possibility* of parole or a 'mere hope' of parole; it creates a categorical entitlement to  'demonstrate maturity and reform,' to show that 'he is fit to rejoin society,' and to have a 'meaningful opportunity for release.'")(emphasis in original) (*quoting Graham* at 79).

Defendants cite to cases that involve parole only marginally and are not on point with the legal questions at issue here regarding sufficiency of Plaintiffs allegations to state a case.  None of the cases involves Eighth Amendment challenges, let alone youth seeking to vindicate their right to a "meaningful and realistic opportunity for release." Defs. Mem. at 37-38.[12]  Indeed,

---

[12] The cases cited by Defendants are *Swarthout v. Cooke*, 562 U.S. 216 (2011) (concluding that minimal due process satisfied in case at bar involving state liberty interest); *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979) (laying out scope of due process protections in parole in scheme involving annual parole hearings); *Gaston v. Taylor*, 946 F.2d 340 (4th Cir. 1991) (rejecting due process claim for infraction that adversely affected parole prospects under theory that Virginia law created no parole entitlement); *Burnette v. Fahey*, 687 F.3d 171 (4th Cir. 2012) (considering only due process and ex post facto claims in case asserting improper denials of parole); *Graziano v. Pataki*, 689, F.3d 110 (2nd Cir. 2012) (assessing whether prisoners' rights to due process, equal protection, or protections from ex post facto laws were violated by parole system).

rather than acknowledging the significance of the Supreme Court's momentous decisions regarding juveniles or meeting head-on Plaintiffs' claims that Defendants operate a system of clemency, Defendants mischaracterize Plaintiffs' position to be that the "the chief executive of the State may not constitutionally participate in the executive function of parole consideration," Defs. Mem. at 40, and proclaim, in response to Plaintiffs' point that no lifer has been paroled in two decades, that "the Eighth Amendment does not require the State to produce data demonstrating that a certain percentage or number of juvenile offenders has been paroled." Defs. Br. at 39.[13]

Contrary to Defendants' assertions, courts have not shied away from enforcing the Eighth Amendment and helping state officials understand and comply with the new constitutional rules flowing from the Supreme Court's cases, including evaluating whether particular schemes more closely resemble systems of clemency in which opportunities for release are rare. *See, e.g., Funchess v. Prince,* No. CV 14-2105, 2016 WL 756530, at *4–5 (E.D. La. Feb. 25, 2016) (concluding that Louisiana fails to provide a meaningful opportunity for release in scheme in which individual may not be released by Board of Pardons unless Governor commutes sentence based on favorable recommendation); *State v. Castaneda*, 287 Neb. 289, 311–14, 842 N.W.2d

---

[13] Defendants also contend in passing that Plaintiffs' sentences were not mandatory despite the explicit language of Maryland's statute describing life sentences as mandatory, because such sentences may be conditionally suspended. Defs Br. at 39.  This argument lacks merit.  First, the sentencing court has no discretion about whether or not to *impose* the full sentence, only to suspend the *execution* of a portion of it.  *Cathcart v. State*, 397 Md. 320, 326-27 (Md. 2007).  The ability to suspend a sentence does not deprive the sentence of its mandatory character—any departure is an act of leniency that strays from the presumption that the sentence will be imposed.  Indeed, in many cases, courts have been unaware of their authority to impose a suspended sentence or believed it permissible only in exceptional circumstances.  More critically, however, the Court's primary concern is whether the sentencing authority has the ability and *has in fact* considered the *Miller* factors and nonetheless imposed the LWOP sentence. *See, e.g., Aiken v. Byars*, 410 S.C. 534, 543 (South Carolina 2014) ("*Miller* does more than ban mandatory life sentencing schemes for juveniles; it establishes an affirmative requirement that courts fully explore the impact of the defendant's juvenility on the sentence rendered); *State v. Riley*, 315 Conn. 637, 653 (2015) ("[W]e hold that the dictates set forth in *Miller* may be violated even when the sentencing authority has discretion to impose a lesser sentence than life without parole if it fails to give due weight to evidence that *Miller* deemed constitutionally significant before determining that such a severe punishment is appropriate.").

740, 757–58 (2014) (rejecting State's argument that mere "possibility" of parole was sufficient in scheme where parole required commutation of sentence by Governor); *Bear Cloud v. State*, 2013 WY 18, at ¶¶ 33-34 (Wyo. 2013) ("*Bear Cloud II*") (Wyoming's framework requiring Governor to commute life sentences to term of years before individuals could be considered for parole operated as system of clemency that violated Eighth Amendment) ("the United States Supreme Court has refused to equate the hope of executive clemency and subsequent parole to the realistic possibility of parole"); *see also Casiano v. Comm'r of Correction*, 317 Conn. 52, 78–79 (2015), *cert. denied sub nom. Semple v. Casiano*, 136 S. Ct. 1364 (2016) ("The United States Supreme Court viewed the concept of 'life' in *Miller* and *Graham* more broadly than biological survival; it implicitly endorsed the notion that an individual is effectively incarcerated for 'life' if he will have no opportunity to truly reenter society or have any meaningful life outside of prison.").

In sum, for the juvenile lifer, a "meaningful" and "realistic" opportunity for release takes on constitutional significance—it is what protects him or her from "be[ing] forced to serve a disproportionate sentence in violation of the Eighth Amendment." *Montgomery, 136 S.Ct. at 736; see also Diatchenko v. District Attorney for Suffolk Dist.*, 471 Mass. 12, 29 (2015) ("the parole hearing acquires a constitutional dimension for a juvenile homicide offender because the availability of a meaningful opportunity for release on parole is what makes the juvenile's mandatory life sentence constitutionally proportionate").  Plaintiffs' claims have been adequately pled and Defendants' Motion must be rejected.

### C.    Plaintiffs Have Pled Sufficient Facts To Assert A Claim That Maryland's Parole Scheme Fails To Meet the Standards Set By the Supreme Court In *Miller* and *Montgomery*.

Defendants have failed to carry their burden to establish that, assuming all of Plaintiffs' pled facts are true, the Complaint fails to state a claim that Plaintiffs have been denied a

meaningful and realistic opportunity for release. Plaintiffs have plainly met this threshold standard and provided significant material allegations sufficient to demonstrate that Defendants operate in practice a system of executive clemency in which opportunities for release are "remote," rather than a true parole scheme in which opportunities for release are "meaningful" and "realistic," and that Plaintiffs have been harmed by Defendants' systemic practices.[14]

Defendants make no argument that the MRJI has failed to plead sufficient facts, but rather focus exclusively on individual named plaintiffs. *See* Def. Mem. at 41-50 (making arguments directed solely at individual named plaintiffs). Defendants thus are presumed to have conceded all arguments as against MRJI and are foreclosed from raising them in their reply brief. *See, e.g., Jones v. Quintana*, 658 F. Supp. 2d 183, 203 n. 17 (D.D.C. 2009) (declining to consider arguments raised for first time in reply brief and citing cases).

Defendants claim that despite being in a system in which no juvenile lifer was paroled over the last two decades, and only 24 lifers, adult or juvenile, out of 2,000 have even been recommended for parole at all, the individual Plaintiffs "have had, and continue to have, meaningful and realistic opportunities to obtain release." Defs Br. at 42. Defendants seem to suggest that, because individual Plaintiffs have made heroic attempts to turn their lives around within a broken system and because they have had parole hearings, Defendants' policies and practices provide them a meaningful opportunity for release. That is absurd.

Defendants also point to the present parole regime and self-servingly argue that the rules and regulations present governing parole in Maryland provide juvenile lifers with a meaningful opportunity for release. The merits of that argument are for determination on another day;

---

[14] Defendants do not assert, nor could they, that any of Plaintiffs are among the "rare" youth who is "irreparably corrupt" and thus beyond the scope of the Eighth Amendment bar against life without parole.

however, it cannot be seriously challenged that Plaintiffs have adequately pled their claim that the rights of Maryland juvenile lifers are not being protected.

Defendants all but ignore the dozens of factual allegations describing how Maryland's parole scheme has evolved into a system of clemency akin to that described in *Solem* and rejected by *Graham* as failing to offer a meaningful and realistic opportunity for release. For example, Plaintiffs show that, consistent with *Solem*'s characterization of clemency, Maryland places excusive authority to parole lifers to the Governor. Compl. ¶¶ 50; 80; 126-29. Indeed, when challenged legally, Maryland courts have reaffirmed that "Maryland Governors have unfettered discretion to grant or deny parole for any reason, without explanation, and without any opportunity for review." Compl. ¶¶ 108, 109. Plaintiffs describe how, over time, the Parole Commission explicitly shifted to a clemency framework, as eventually MPC "all but ceased making recommendations for parole, shifting to a practice of making recommendations for commutation in a handful of cases." Compl. ¶¶ 113; 111; 104-107. Plaintiffs' allegations also explicitly address the unavailability and irregularity of opportunities for release, consistent with *Solem*'s inquiry, *id.* at 301-03, pointing out that between 1995 and 2014, the "MPC recommended [only] 24 lifers, both juveniles and adults, for parole. Every recommendation was rejected without any explanation to the individual denied parole." Compl. ¶¶ 115-118. *See also, e.g., Hayden* at 1005, 1010 (relying on data showing that only seven juveniles were paroled between 2010-2015 as evidence of lack of meaningful opportunity for release); *Funchess v. Prince,* No. CV 14-2105, 2016 WL 756530, at *4–5 (E.D. La. Feb. 25, 2016) (in concluding that Louisiana fails to provide a meaningful opportunity for release, noting that in 2014 Board of Pardons recommended favorably only 64 of 931 applications and that in eight years of office Governor had granted clemency to only 83 people); *State v. Louisell*, 865 N.W.2d 590 (Iowa

2015) (Without reaching the question, highlighting that only one out of 38 juvenile LWOP cases were granted parole after changes to the law and questioning whether "repeated cursory denials of parole deprive juvenile offenders who have shown demonstrable rehabilitation and maturity of a meaningful or realistic opportunity for release").

Defendants contentions regarding individual Plaintiffs plainly do not support dismissal of this action. For example, defendants contend that because Mr. McNeill was recommended for clemency, he cannot contend he has been denied a meaningful opportunity for release and cannot, for example, show that the categorical bar on progressing below medium security harmed his prospects for release.[15]    But the fact that Mr. McNeill was able to earn a recommendation for clemency *in spite of* this bar does not mean that he has not been harmed by the Defendants' policies and practices that deny him and every other lifer the critically important opportunity to work his way out of the system by gradually earning privileges, demonstrating success in lower-security settings, developing a meaningful employment history, family ties and other community connections. Compl. ¶¶ 99-103; 133-35.   Indeed, *for nearly 20 years*, Mr. McNeill has been identified in the DOC as a strong candidate for progression to lesser security but has been denied this opportunity solely because of his status as a lifer and without regard for his youth at the time of offense.  Compl. ¶¶131-32. If anything, Mr. McNeill's case demonstrates precisely that the only available opportunities for release are rare grants of clemency—which is exactly what is barred by *Graham*.

Equally bewildering are Defendants' contentions that Plaintiff Tucker, who has now been incarcerated for 42 years for an offense committed at age 17, has failed to allege sufficient facts

---

[15] Defendants' own evidence shows the critical importance that officials have assigned to juvenile's ability to function and succeed at lesser security levels in the context of commutations, as the release of individuals cited by defendants as being "paroled" was conditioned upon successful "testing" in the community.  *See* Def. Def. Exh. 1, Attachment A at p. 2; Attachment C at p.2; Attachment E at p. 1.

to show he has been denied a meaningful opportunity for release.  Defendants contend that Mr. Tucker fails to allege that in his parole hearings the MPC did not consider his youth. But Plaintiffs allege that MPC's practices do not adequately distinguish between youth and adults. Compl. ¶¶ 61, 82-84.[16]  Defendants also utterly fail to credit Plaintiffs' facts by asserting that Plaintiff Tucker "has not alleged any facts rising 'above the speculative level'" that MPC's risk assessment practices deny him a meaningful opportunity for release.  *Compare* Def Br. at 47 with Compl. ¶¶ 87-88 (specific allegations describing how risk assessments disadvantage youth as a class and are relied upon improperly).  Indeed, Mr. Tucker could not provide more detail because no explanation was ever given, even after he specifically requested information.  Indeed, this is one of Plaintiffs' examples of how Defendants' practices frustrate juveniles' opportunity for release. Compl. ¶¶ 143-44.

Finally, Defendants' arguments fare no better with respect to Mr. Foster. Plaintiffs' Complaint includes several pages chronicling repeated refusals of parole to Mr. Foster, despite his near-perfect institutional record, either without any reason offered or else based on the "nature and circumstances of the crime."[17] Defendants assert that Mr. Foster has not "alleged any facts indicating that, in the last 20 years, any parole decision has conditioned release on progression to minimum or work release security."  Defendants are asking far more than is required.  Plaintiffs allege, in detail, Compl. ¶¶ 97-103, how the categorical bar has impacted opportunities for release.  Mr. Foster has alleged facts showing his loss of hope in the process at various points, Compl. ¶ 165, that he was instructed at his first parole hearing to work towards proceeding to lesser security, *Id.* at ¶157, that members of the MPC told him in 2005 that the

---

[16] Moreover, consideration of youth alone does not mean that a juvenile received a meaningful opportunity for release.

[17] The crime in Mr. Foster's case was a robbery in which the victim was killed by a single gunshot. Compl. ¶ 146.

Governor was not going to sign any lifer parole papers, *Id.* at ¶159, and that his inability to move below medium security has prejudiced him.  *Id.* at ¶156.  Likewise Defendants' claim that Mr. Foster has not "alleged any facts demonstrating that he has been denied parole due to the results of a risk assessment that 'holds his youth at the time of offense against him'" is misplaced.  Def. Br. at 49 (*quoting* Compl. ¶166). Mr. Foster could not allege this, as Defendants have not *yet* subjected him to the improper tool. Compl. ¶ 165. [18]

## IV.    SUMMARY JUDGMENT IS WHOLLY INAPPROPRIATE PRIOR TO DISCOVERY, AND ESPECIALLY IN THE CONTEXT OF THIS CASE

Plaintiffs vigorously contest consideration of Defendants' extrinsic evidence prior to Plaintiffs' opportunity for discovery. When a party moves for dismissal but relies on evidence outside the pleadings, as Defendants do here, Fed. R. Civ. P. 12(d) directs courts to treat the motion as one for summary judgment.  A motion for summary judgment should not be granted unless the movant can prove, "from the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits, the court believes no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law."  *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013).  In evaluating the evidence, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Raynor v. Pugh*, 817 F.3d 123  at 128 (4th Cir. Mar. 17, 2016) (*quoting Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

A district court therefore "must refuse summary judgment 'where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition.'"  *Greater*

---

[18] Defendants claim that Mr. Foster has "failed to allege facts sufficient to raise a right to relief 'above a speculative level'" because he does not specifically allege that the commissioners failed to consider his youth fails for the same reason as it does for Mr. Tucker.  Def. Mem. at 50 (quotations and citation marks omitted). Plaintiffs allege that MPC's practices do not adequately distinguish between youth and adults, Compl. ¶¶ 61, 82-84 and that Mr. Foster has been harmed by these practices.  Compl. ¶ 18, 157-66.

*Baltimore Ctr. for Pregnancy Concerns, Inc. v. Baltimore*, 721 F.3d 264, 280 (4th Cir. 2013) (*quoting Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008)).  It is "especially important" to allow "sufficient time for discovery . . . when the relevant facts are exclusively in the control of the opposing party."  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246-47 (4th Cir. 2002) (*quoting* 10B Charles A. Wright et al., Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)); *see also E.I. du Pont de Memours & Co.,* 637 F.3d at 448 (Summary judgment "is not appropriate where the parties have not had an opportunity for reasonable discovery.").

Indeed, it is impermissible in the Fourth Circuit to grant summary judgement before the plaintiff has a "reasonable opportunity for discovery," and it has been impermissible for more than four decades.  *Bailey*, 488 F. App'x at 716; *E. I. du Pont de Nemours & Co.,* 637 F.3d at 448-49; *Gay,* 761 F.2d at 178; *Johnson*, 491 F.2d at 514.  Given the clarity and longevity of this principle, and the fact that Defendants have not even filed their Answer in this case let alone engaged in discovery, Defendants' summary judgment request is flawed on its face and should not have been presented to the Court.

Defendants' attempted introduction of 70-plus pages of new "evidence" of "parole" of juvenile lifers, which they refer to as "undisputed" evidence, should be reprimanded by the Court as obviously improper.  For example, Defendants' attempt to introduce evidence of the policies and practices of the MPC in order to focus the Court on the weight of their arguments when this is clearly improper at this early stage of litigation.  Similarly, Defendants' attempt to introduce regulations proposed after the filing of the suit, which are still under review and have not yet gone into effect, also is improper at this stage.  Plaintiffs are entitled to discovery to challenge the claim of sufficiency that the Defendants ascribe to its rules and policies before summary judgment motions are considered.

Defendants' misrepresentation of the five cases of juvenile lifers they cite as cases in which individuals were "paroled," rather than cases of executive clemency is simply beyond the pale both as a matter of procedure and on the merits. First, these new facts clearly are not permissible in a motion to dismiss before discovery has begun and they should not be considered by the Court. But notably, even Defendants' own improperly introduced "facts" presented do not support the claims they make about them. Specifically, in four of the five cases, the Governor *commuted* the individual's sentence *in order for the person then to be paroled*. *See* Def. Br. at 11-14. Commutation is, by definition, clemency and not parole. Md. Code. Cor. Serv. § 7-101(d) ("'Commutation of sentence' means an act of clemency in which the Governor, by order, substitutes a lesser penalty for the grantee's offense for the penalty imposed by the court in which the grantee was convicted.). Indeed, even the Orders cited by defendants describe the action as "clemency." *See, e.g.,* Def. Exh. 1, Attachment A at p. 1. Defendants' "evidence" thus actually *supports* Plaintiffs' contentions that Maryland's parole scheme for lifers operates as a system of clemency. Courts have rejected as unconstitutional schemes in which parole is conditioned upon clemency. *See, supra,* at p. 20 (citing cases). The fifth case is equally objectionable. Milton Humphrey received medical parole. Medical parole has nothing to do with someone's rehabilitation, but is typically granted only *because* someone is gravely ill. Mr. Humphrey, in short, was only released because he was dying, and he in fact died about 20 days after being medically paroled. Def. Br. at 15. Paroling someone to die is not a "meaningful" and "realistic" opportunity for release. *See, e.g., Casiano v. Comm'r of Correction*, 317 Conn. 52, 78–79 (2015), *cert. denied sub nom. Semple v. Casiano*, 136 S. Ct. 1364 (2016) ("The United States Supreme Court viewed the concept of 'life' in *Miller* and *Graham* more broadly than biological survival; it implicitly endorsed the notion that an individual is effectively incarcerated

for 'life' if he will have no opportunity to truly reenter society or have any meaningful life outside of prison.").[19]

A non-moving party may file an affidavit explaining that "it cannot present facts essential to justify its opposition" to a summary judgment motion. Fed. R. Civ. P. 56(d). Filed with this opposition brief is the Declaration of Barry J. Fleishman, explaining why certain facts essential to oppose the motions cannot be set forth. The Plaintiffs request that Defendant's motion be denied and that Defendants be reprimanded for knowingly bringing before the Court a motion they knew or should have known cannot be granted in this Circuit.

## V.    DEFENDANTS ARGUMENTS REGARDING THE PLRA ARE WITHOUT MERIT

Defendants argue that Plaintiffs' claims against the DOC Commissioner,[20] challenging mandatory classification policies that bar all juvenile lifers from rehabilitative opportunities affecting their opportunity for release, Compl. ¶¶ 73, 91-103, should be dismissed for failure to exhaust under the Prison Litigation Reform Act ("PLRA"). The PLRA provides an affirmative defense to suit by requiring the exhaustion of available administrative remedies prior to filing a suit challenging the conditions of a prisoner's confinement. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints").

---

[19] Even were the Court to consider such acts instances of "parole," at most Defendants have shown that four out of 200 juvenile lifers were released over a period of decades, which is simply not enough to rebut and overcome Plaintiffs' allegations that they are denied a meaningful and realistic opportunity for release.

[20] Defendants have advised counsel that Commissioner Wayne Webb, named in Plaintiffs' Complaint, has since been replaced by Commissioner Dayena Corcoran.

As a preliminary matter, because the MRJI is not a person that is incarcerated or detained, this plaintiff's claims would not be subject to the PLRA's exhaustion requirement. *See* 42 U.S.C. § 1997e(h) ("The term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."); *Alabama Disabilities Advocacy Program v. Wood*, 584 F. Supp. 2d 1314, 1316 (M.D. Ala. 2008) (finding that the prisoner-litigation sections of the PLRA did not apply to a disability advocacy program because it was not a "person" and had neither been incarcerated nor detained).

With respect to individual named plaintiffs, Defendants' PLRA exhaustion argument is premature at the Motion to Dismiss stage. As established by the Supreme Court and affirmed by this Court, a Motion to Dismiss is rarely an appropriate vehicle for resolving the affirmative defense provided by the exhaustion requirement because plaintiffs are under no obligation to plead exhaustion. *Jarboe v. Maryland Dep't of Public Safety & Corr. Servs.*, No. CIV.A.ELH-12-572, 2013 WL 1010357, at *8 (D. Md. Mar. 13, 2013) (Dismissal of prisoner suit under 12(b)(6) for failure to exhaust "conceivab[le] but "rare" because "'the burden of pleading exhaustion in a case covered by the PLRA' is not placed 'on the prisoner.'") (*quoting Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Here, Defendants do not suggest that the matter can be resolved on the face of Plaintiffs' complaint, but rather have sought to introduce extrinsic evidence to support their argument that individual plaintiffs have failed to satisfy the PLRA's requirements. *See* Def.'s Mot. Dismiss Exh. 3. Consideration of Defendants' evidence thus requires conversion of their motion to one for summary judgment. As noted *supra* at pp. 25-28, Plaintiffs have objected to the

32

consideration of Defendants' external evidence and submitted an affidavit explaining the need for discovery prior to consideration of any evidence submitted by Defendants.

The Supreme Court's recent decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016) "*Ross*", a Maryland prison case, illustrates precisely why and how exhaustion is, in a case such as this, a fact-specific inquiry improper for resolution prior to discovery.  In *Ross*, Justice Kagan, writing for a unanimous court, held that the PLRA includes its own textual exception to mandatory exhaustion—the requirement that administrative remedies be "available." *Id*. at 1858 (citing § 1997e(a)).  According to the Court, "that limitation on an inmate's duty to exhaust…has real content. … an inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id*. at 1858-59 (quotations and citations omitted).  This standard, Justice Kagan wrote, merely begins the inquiry; "courts in this and other cases must apply it to the real-world workings of prison grievance systems." *Id*. at 1859.  The Court identified three instances previously identified in federal jurisprudence "in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*.  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. Third, there is no "available" relief when "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

Applying those principles to the case before it, the Court questioned whether Mr. Blake did indeed have any "available" remedy to exhaust, noting that the materials in the record "reveal[ed] Maryland's grievance process to have, at least at first blush, some bewildering features."  The Court highlighted, for example, inconsistencies in how grievances of the same type were handled by different administrators; that there were repeated failures on the part of prison administrators to state unequivocally that a grievance was or not permissible; and the like.

In the instant case, if permitted to proceed, Plaintiffs aver that they would demonstrate that in practice and under the mandates of *Ross,* there is no available remedy to individual plaintiffs for grieving the classification decisions and practices challenged here. Plaintiffs believe that they would be able to discover evidence demonstrating that Defendants' own policies reflect that issues pertaining to classification cannot be grieved, as would Defendants' staff.

Because under Rule 56(a), summary judgment may only be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986), Plaintiffs respectfully urge this Court to reject Defendants' contention that their claims against the DOC Commissioner must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully urge this Court to deny Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment.

Dated:  September 9, 2016                    Respectfully Submitted,

_/ s/ Barry J. Fleishman_
Barry J. Fleishman, Esq. (Bar No. 15869)
KILPATRICK TOWNSEND STOCKTON LLP
607 14TH Street, N.W., Suite 900
Washington, D.C. 20005
Tel:  (202) 508-5835
bfleishman@kilpatricktownsend.com

Deborah A. Jeon (Bar No. 06905)
Sonia Kumar (Bar No. 07196)
ACLU of MARYLAND
3600 Clipper Mill Road, Suite 350
Baltimore, MD 21211
Tel:  (410) 889-8550 x 103
jeon@aclu-md.org
kumar@aclu-md.org

_Counsel for Plaintiffs_

**CERTIFICATE OF SERVICE**

I certify that service of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** has been made by electronic cm/ecf, addressed to :

Russell P. Butler
Victor D. Stone
Maryland Crime Victim's Resource Center, Inc.
1001 Prince George's Blvd., Suite 750
Upper Marlboro, MD 20774
Tel:  (240) 335-4014
Fax: (240) 929-0526
rbutler@oag.state.md.us

*Counsel for Movants*

Stephen M. Sullivan Assistant Attorney General for Maryland
Chief of Civil Litigation
200 St. Paul's Place,
Baltimore, MD 21202
Tel:  (410) 576-6325
Fax: (410) 576-6955
ssullivan@oag.state.md.us

Michael O. Doyle
State of Maryland Office of the Attorney General
Department of Public Safety and Correctional Services
300 East Joppa Road, Suite 1000
Towson, MD 21286
Tel:  (410) 339-7567
Fax: (410) 339-4243
mdoyle@dpscs.state.md.us

*Counsel for Defendants*

Dated:  September 9, 2016

/ s/ Barry J. Fleishman
Barry J. Fleishman, Esq. (Bar No. 15869)
KILPATRICK TOWNSEND STOCKTON LLP
607 14TH Street, N.W., Suite 900
Washington, D.C. 20005
Tel:  (202) 508-5835
Fax: (202) 585-0003
bfleishman@kilpatricktownsend.com

36