IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARYLAND RESTORATIVE JUSTICE INITIATIVE, *et al.* | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | | Civil Case No. 16–01021–ELH |
| | * | |
| HOGAN, *et al.* | | |
| | * | |
| Defendants. | | |
| | * * * * * * * | |

**MEMORANDUM OPINION**

This case concerns a challenge to the constitutionality of Maryland's parole system as applied to individuals who received sentences of life imprisonment with parole for homicide offenses committed as juveniles. The Maryland Restorative Justice Initiative ("MRJI") filed suit on behalf of Calvin McNeill, Nathaniel Foster, and Kenneth Tucker (collectively, "Plaintiffs") against four Maryland officials in their official capacities: Governor Larry Hogan; David Blumberg, Chair of the Maryland Parole Commission; Stephen Moyer, Secretary of the Maryland Department of Public Safety and Correctional Services; and Dayena M. Corcoran, Commissioner of the Maryland Division of Correction, (collectively, the "State").

This case has been referred to me for resolution of all discovery and related scheduling matters pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF No. 85). Now pending before the Court is Plaintiffs' Motion to Compel, complaining of the State's insufficient and incomplete answers to discovery requests. (ECF No. 84). The Court has reviewed Plaintiffs' Motion to Compel, the State's Opposition to Plaintiffs' Motion to Compel, and Plaintiffs' Reply in Support of its Motion to Compel. *Id.* The Court held a hearing on the issues on September 26, 2017. For the reasons stated below, Plaintiffs' Motion to Compel is granted in part and denied in part.

## I. Timeframe of Relevant Discovery (Interrogatory Nos. 3, 4, 6, 12; Request Nos. 1, 3–8)

Plaintiffs argue that the State must provide discovery materials dating back to 1995, "the year then-Governor Parris Glendening announced that he was unwilling to grant parole to individuals serving life sentences." (Pl. Mot. to Compel, ECF No. 84–3 at 13). Plaintiffs assert that since Governor Glendening adopted this "life means life" policy, other administrations have carried this forward, either explicitly or in practice.

The State responds by pointing out that it has already agreed to provide discovery dating back to 2004, the first year in which any of the named defendants held office in Maryland, and that the "proper focus of this case should be the State's *current* policies and procedures regarding the parole of juvenile lifers" because Plaintiffs "have requested only prospective declaratory and injunctive relief." (Def. Opp., ECF No. 84–7 at 5).

The Court agrees with the State. Even if, for the sake of argument, current policy was influenced by prior administrations, it is the policy itself and its current implementation by these specific defendants that is at issue in this case. By agreeing to provide more than a dozen years of information, the State's position is reasonable and proportional to the needs of the case, and is therefore compliant with the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" ).

## II. Executive Privilege (Interrogatory Nos. 3, 4, 10; Request Nos. 5, 6, 8, 9)

At oral argument, the State clarified that, with one categorical exception,[1] it does not object to producing documents relating to parole decisions during the relevant timeframe because such decisions do not contain "recommendations" in the strictest sense to the Governor, but

---

[1] The State does object to producing the "Risk Assessment" portion of the parole files other than those of the individual plaintiffs, which will be separately addressed in Section III below.

instead reflect an approval by the Parole Commission that is then sent to the Governor for his sign-off. However, the State differentiates documents related to commutations from those related to parole decisions because the former do, in fact, contain a formal recommendation by the Parole Commission to the Governor. As to those documents, the State has agreed to produce all information, except the recommendation itself,[2] for any commutation files that have been acted upon by the Governor but will not produce any files for commutation decisions currently pending before the Governor (of which there are seventeen (17)). The State relies on executive privilege in support of its position.

In cases before a federal court based on federal question jurisdiction, executive privilege is governed by federal common law. *Pulte Home Corp. v. Montgomery Cnty.*, No. CIV. GJH–14–3955, 2017 WL 2361167, *2 (D. Md. May 31, 2017); *Jones v. Murphy*, 256 F.R.D. 510, 515 n.5 (D. Md. 2008) (applying federal common law to claims of executive privilege "because the state [of Maryland] and federal laws of executive privilege do not conflict" and are substantially similar). Part of the executive privilege is the deliberative process privilege.

The focus of the deliberative process privilege is protecting against disclosure of "letters, memoranda or similar internal government documents containing confidential opinions, deliberations, advice or recommendations from one governmental employee or official to another official for the purpose of assisting the latter official in the decision-making function." *Johnson v. Baltimore City Police Dept.*, No. CIV. ELH–12–2519, 2013 WL 497868, *6 (D. Md. Feb. 7, 2013) (internal citations omitted). In order for an objection based on the deliberative process privilege to apply, a document must be both predecisional and deliberative. "Predecisional documents are those prepared in order to assist an agency decisionmaker in arriving at his decision and deliberative documents are those that reflect the give-and-take of the consultative

---

[2] As with parole files, the State objects to producing the Risk Assessment portion of the commutation files.

process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *Solers, Inc. v. IRS*, 827 F.3d 323, 329 (4th Cir. 2016).  Any factual material that may be segregated from the deliberative document and that does not reveal the deliberative process is not subject to the protection and must be disclosed.  *Freeman v. U.S. Dept. of Justice*, 723 F.Supp. 1115, 1121 (D. Md. 1988).

Plaintiffs argue that: (1) the State has not asserted executive privilege with sufficient particularity; (2) even if executive privilege applies to the Parole Commission's recommendation, it does not apply to factual information within the files; and (3) executive privilege, even if it applies, is not absolute.  (Pl. Mot. to Compel, ECF No. 84–3 at 4–12).

The Court disagrees with Plaintiffs' first contention.  It is clear that the redacted recommendations in the commutation files are those of the type contemplated by *Johnson*, *supra*.  The deliberative process privilege clearly applies to the specific recommendation the Parole Commission submits to the Governor prior to the Governor's final commutation decision.  Each recommendation letter is prepared by the Parole Commission to assist the Governor, as decisionmaker, in arriving at a final decision for each offender.  Moreover, the letter represents the manner in which the Parole Commission and the Governor evaluate possible alternative outcomes in each offender's case.  The redacted versions of the letters (as exemplified in ECF No. 84–12) offered by the State are sufficient to protect the information to which the deliberative process privilege applies and still properly provide the discovery that Plaintiffs requested, with respect to cases in which the Governor has already made a commutation decision.[3]

The Court agrees with Plaintiff's second contention, to a point.  Factual information generally does not fall within the deliberative process privilege.  As to those commutation

---

[3] Additionally, as disclosed at oral argument, the Plaintiffs already have a general sense of the recommendation since, by virtue of the fact that it is being sent to the Governor, the Parole Commission is recommending commutation of some sort.

decisions that have already been made, the Court expects (and the State seems to agree based on its position at oral argument) that the State will produce the portions of the already-decided commutation files that contain only factual information.

As for those seventeen (17) commutation decisions currently pending with the Governor, the Court will not order their production at this juncture. The State's interest in shielding the deliberative process as it is currently unfolding in real time, along with the interest of the seventeen (17) individuals who await the outcome of that process, outweighs any claim for immediate access to the information that the Plaintiffs have. Once those decisions have been made, the State will produce them as outlined above.

## III. Attorney Work Product & Attorney-Client Privilege (Interrogatory Nos. 3, 4, 10; Request Nos. 5–11)

The attorney work product protection and attorney-client privilege both serve to prevent discovery of related materials. The attorney work product protection, codified at Federal Rule of Civil Procedure 26(b)(3)(A), prevents discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, indemnitor, insurer, or agent)." Similarly, the attorney-client privilege prevents the disclosure of a confidential communication between a client and his or her attorney for the purpose of obtaining legal advice. The privilege applies "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by his legal adviser, (8) except the protection may be waived." *Sky Angel U.S., LLC v. Discovery Communications, LLC*, 28 F.Supp.3d 465, 482 (D. Md. 2014). A claim of attorney-client

privilege is only legitimate where the client has sought the giving of *legal*, not *political*, advice. *See Republican Party of North Carolina v. Martin*, 136 F.R.D. 421, 246 (E.D. N.C. 1991) ("In order for the privilege to apply, the attorney-client communication must be given incident to a request for, or the rendition of *legal advice*. If the communication essentially involves the giving of political advice, then it is not privileged.") (internal citations omitted); *Evans v. City of Chicago*, 231 F.R.D. 302, 312–14 (N.D. Ill. 2005) (holding that communications between governor and governor's counsel reflecting political advice, not legal advice, were not privileged).

The distinction between legal advice and political advice is particularly relevant to this lawsuit due to the roles of the Governor and the Office of Legal Counsel within the commutation/parole process in Maryland. It is quite possible that some communications between the Governor and the Office of Legal Counsel were made for the purpose of obtaining legal advice, and it is also quite possible that some communications were made for the purpose of obtaining other types of advice that would fall outside the privilege. However, the State needs to provide a complete privilege log detailing the documents for which privilege is claimed. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (holding that the burden is on the proponent of the privilege to demonstrate "not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived."). Once the production of the documents and log are complete, the Court will have sufficient information to decide any challenge to the privilege assertion by Plaintiffs for any particular document.

**IV.    Risk Assessments Used in the Parole Evaluation Process (Request No. 4)**

Within the parole and commutation files is the "Risk Assessment," which is considered as one part of the process.   As the State explains, each individual's risk assessment includes results of psychological testing, past instances of physical or sexual abuse, drug and alcohol use, family trauma, victim information, etc.   The State takes no issue with providing the named Plaintiffs with copies of their own risk assessments, but objects to providing the risk assessments of non-plaintiffs given the sensitive nature of the file contents.   The State also emphasizes that the risk assessment is just one piece of data considered by the Parole Commission in its decisionmaking process and therefore is not critical to Plaintiff's case.   Moreover, the State points out that this case does not involve an assessment of any individual parole/commutation decision nor does it include any argument from Plaintiffs that they were being treated differently from other similarly-situated offenders.   Plaintiffs confirm this, but insist that the risk assessments are necessary to fully understand the parole/commutation process in Maryland.   Further, Plaintiffs argue that any confidentiality concerns can be alleviated with the use of a protective order.

The Court shares the State's privacy concerns given the highly sensitive file contents of strangers to this litigation.   A protective order may offer some protection of further dissemination of file contents beyond the litigation, but does not address the more fundamental issue of sharing this information with Plaintiffs themselves and their litigation team.   At the same time, Plaintiffs should be given some insight into the types of information collected and its potential role in the process.   Accordingly, the State will produce six (6) risk assessments (three (3) from juvenile lifers and three (3) from adult lifers) with the personally-identifiable information redacted.

**V.   Conclusion**

For the foregoing reasons, Plaintiff's Motion to Compel (ECF No. 84) is GRANTED in

part and DENIED in part.  A separate Order shall follow.

Dated: September 27, 2017                                            /s/
                                                                        J. Mark Coulson
                                                                        United States Magistrate Judge