IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARYLAND RESTORATIVE JUSTICE     *
INITIATIVE, *et al.*
                                                       *

     Plaintiffs
                                                       *

v.                                                     Civil Case No. 16–01021–ELH
                                                       *

HOGAN, *et al.*
                                                       *

     Defendants.
                                                    * * * * * * * * * *

## **MEMORANDUM OPINION**

This case concerns a challenge to the constitutionality of Maryland's parole system as applied to individuals who received sentences of life imprisonment with parole for offenses committed as juveniles. The Maryland Restorative Justice Initiative ("MRJI") filed suit on behalf of Calvin McNeill, Nathaniel Foster, and Kenneth Tucker (collectively, "Plaintiffs") against four Maryland officials in their official capacities: Governor Larry Hogan; David Blumberg, Chair of the Maryland Parole Commission; Stephen Moyer, Secretary of the Maryland Department of Public Safety and Correctional Services; and Dayena M. Corcoran, Commissioner of the Maryland Division of Correction, (collectively, the "State").

This case was referred to me for resolution of all discovery and related scheduling matters pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF No. 85). Now pending is Plaintiffs' Motion to Compel, complaining of the State's insufficient and incomplete production of documents. (ECF No. 172). The issues are briefed and no hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the reasons stated below, Plaintiffs' Motion to Compel is GRANTED in part and DENIED in part.

**I. Timeframe for Relevant Discovery**

On September 27, 2017, this Court issued a Memorandum Opinion concerning many of the issues before it today, including the timeframe for relevant discovery, attorney-client privilege, and executive privilege. (ECF No. 88). When addressing the Plaintiffs' production requests dating back to 1995 and the State's proposal to produce documents dating back to 2004, this Court explained that:

> Even if, for the sake of argument, current policy was influenced by prior administrations, it is the policy itself and its current implementation by these specific defendants that is at issue in this case. By agreeing to provide more than a dozen years of information, the State's position is reasonable and proportional to the needs of the case, and is therefore compliant with the Federal Rules of Civil Procedure.

(*Id.* at 2).

The State, however, recently informed Plaintiffs that "any documents in the files of former non-defendant Governors, whether privileged or non-privileged, are irrelevant to the claims and defenses in this action . . . ." and that it will only produce records of the current Governor. (ECF No. 172-8 at 3). In support of its decision, the State points to the changes to the legal landscape caused by Executive Order 01.01.2018.06 (setting the standards the Governor now must apply in considering juvenile lifers for parole). The State also cites the Maryland Court of Appeals' decision in *Carter, Bowie, & McCullough v. State*, __ Md. __, Nos. 54, 55, & 26, Sept. Term 2017, 2018 WL 4140672 (Aug. 29, 2018) where the Court of Appeals denied a similar constitutional challenge to the State's parole system by individuals receiving life sentences as juveniles, holding that "the laws governing parole of inmates serving life sentences in Maryland, including the parole statute, regulations, and a recent executive order adopted by the Governor, on their face allow a juvenile offender serving a life sentence a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" These

developments—the State argues—are even more reason to focus on the current system of dealing with parole requests as opposed to what may have occurred under past administrations given the prominence of Governor Hogan's Executive Order in the Maryland Court of Appeals' reasoning. The State also contends—having now reviewed and produced documents for the current administration—that the high burden and expected low yield (due to executive and attorney-client privilege) significantly outweighs the relevance of documents related to past administrations.

For their part, Plaintiffs argue that the change of heart by the State in limiting the scope of its production amount to a much-delayed objection to discovery more than a year after the fact, constituting a waiver for which no good cause exists. Additionally, Plaintiffs argue that Governor Hogan's Executive Order (and the Court of Appeals' reliance on it) does not justify narrowing the scope of discovery. (ECF No. 172 at 6-7).

In the Court's view, this dispute cannot be decided simply by employing a waiver analysis. To be sure, a party's prior representation that a certain scope of discovery would govern could constitute a waiver of a later objection to that scope. In such a case, the Court would then engage in a "good faith" analysis to determine whether there has been a sufficient change in circumstance that would excuse such a waiver. *Hall v. Sullivan*, 231 F.R.D. 468, 473-74 (D. Md. 2005). However, as noted in *Mancia v. Mayflower Textile Servcs.*, regardless of the outcome of this waiver analysis, the Court is tasked with its own obligation to evaluate the benefits and burdens of the requested discovery. 253 F.R.D. 354, 363 (D. Md. 2008). This is consistent with the Court's duty to independently construe, administer, and employ discovery rules "to secure the just, speedy and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In completing its obligations of active case management, this Court must

always measure discovery against relevance to the claims and defenses and the ever present "yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010) (citing Fed. R. Civ. P. 26(b)(2)(C)). Whether it is pursuant to a party's motion or on its own initiative, this Court "must limit the frequency or extent of discovery" if "the discovery sought is unreasonably cumulative" or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii). In the Court's view, its duties in this regard are ongoing and not discharged through a single static assessment of the case. Rather, the Court is required to reassess the above balancing as a case evolves.

Following Judge Hollander's ruling on the State's Motion to Dismiss, (ECF No. 65), the two causes of action before the Court are Count 1 – Violation of the Eight Amendment Prohibition Against Cruel and Unusual Punishment and 42 U.S.C. § 1983 against all Defendants, and Count 2 – Violation of Article 25, Md. Decl. of Rights Prohibition Against Cruel or Unusual Punishment against all Defendants. (ECF No. 1). The basis of both are that the State "operate[s] a parole scheme that is indistinguishable from a system of *ad hoc* executive clemency in which grants of release are exceptionally rare, are governed by no substantive or enforceable standards," and that this scheme "as applied to Plaintiffs, has not afforded them a meaningful and realistic opportunity for release." (ECF No. 1 at ¶¶ 167-69, 174-177). By way of relief, Plaintiffs request that the Court declare the following unconstitutional: (1) the "parole scheme" operated by the State; (2) the law granting the Governor's authority over the parole process; and (3) the denial of Plaintiffs and other juvenile lifers a meaningful and realistic opportunity for

4

release. (*Id.* at 59-60). Plaintiffs also requests that this Court issue an injunction "immediately to discontinue these practices and take remedial steps to address their past illegal conduct, by granting Plaintiffs, and others represented by the Maryland Restorative Justice Initiative, a meaningful and realistic opportunity to demonstrate their readiness for release." (*Id.* at 60-61). In other words, Plaintiffs ask the Court to assess the *current* "parole scheme" (to include the Governor's role) against the relevant constitutional principles and, if found infirm, order *these* Defendants to change their practices so as to provide Plaintiffs a meaningful opportunity for release.

Plaintiffs assert that their case is against the Office of the Governor and that they are entitled to "pursue discovery . . . regardless of who happens to be Governor." (ECF Nos. 172 at 4 and 181 at 6). As noted above however, this Court previously expressed its skepticism about the relevance of such materials. It would appear to the Court that the only potential basis to look beyond the current administration is to search for a hidden policy or standard practice unwaveringly followed by each successive administration (in uncharacteristically bipartisan fashion) to deny juvenile offenders meaningful opportunities for parole. (ECF No. 84-3 at 13). Such a scenario seems farfetched. But even if such a historical policy was the motivation for the current Defendants, Plaintiffs do not adequately explain why its application by prior administrations would be sufficiently relevant in this case, given that the Complaint is limited to prospective claims for relief focused on current implementation of current policy (as now supplemented by Governor Hogan's Executive Order). In short, Plaintiffs have simply not shown how the theoretical conduct of a former administration would be sufficiently probative of alleged unconstitutional conduct by the current Defendants.

5

This is especially so given the low yield and high burden involved with an expanded scope. Plaintiffs have injected their claims into the heart of executive decision making and, unsurprisingly, the State has effectively asserted and defended claims of executive and attorney-client privilege. With this as a guide, the Court suspects that files of past governors, like those of the current administration, will spark numerous disputes over privilege and ultimately yield little to no usable non-privileged information. Moreover, the State has articulated the burdens it will face with detail. To date, the State has spent an estimated 300 hours responding to Plaintiffs' requests, reviewing for responsiveness and privilege, redacting, and preparing privilege logs. (ECF No. 177-8 at 1). This already high estimate does not include any time spent by the Governor's Office of Legal Counsel in collecting and preliminarily reviewing the documents. The State projects that producing the files maintained by Governors Ehrlich and O'Malley would require review of several thousand documents, redaction of privileged information, the preparation of a privilege log, and the assistance of representatives from the prior administrations. The State additionally asserts that if required to search for electronic documents and information from the current timeframe it would, at a minimum, take an additional 500 hours to conduct the electronic searches, compile the thousands to hundreds of thousands of emails, review for responsiveness, stamp, redact, and, if necessary, detail within a privilege log. Lastly, the State asserts that the majority of the responsive documents were generated and maintained by the Governor's Office of Legal Counsel and "would be heavily, if not entirely, redacted." (ECF No. 177-8).

While the importance of the issues at hand cannot be overstated, the importance of this expansive discovery as to resolving these issues, in the Court's opinion, is minor at best. Plaintiffs' impassioned arguments on how the time complying with discovery requests is merely

a fraction of that Plaintiffs have spent incarcerated it not lost on the Court. (ECF No. 181 at 8). But the question before the Court in deciding a discovery dispute is not freedom or incarceration. Nor is it discovery versus no discovery. Plaintiffs have requested and received vast amounts of information. Over the course of discovery the State has produced at least 248 parole files for inspection, thousands of electronic copies, redacted versions of the lifer files maintained by the Governor, additional files maintained by the Governor on a rolling basis, and another round of document production. (ECF No. 177 at 20). Rather, the most pertinent question is if the burdens of complying with this timeframe outweigh the likely benefit. In light of the burdens articulated by the State and the minimal possibility of discovering any information of any significant relevance to the claims of the Plaintiffs, this Court will narrow the scope of permissible relevant discovery as to the actions of the Governor to the administration of Governor Hogan. Any already produced pre-Hogan discovery may be utilized by Plaintiffs, but the State no longer must produce any documents concerning the Governor's office from outside of the ordered timeframe of relevance.

## II. Attorney Work Product and Attorney-Client Privilege

Plaintiffs argue that the State's September 14, 2018 privilege log includes many defective assertions. Specifically, Plaintiffs argue that some entries are defective because they fail to identify all authors and recipients and others fail to sufficiently assert attorney-client privilege. The State contends that its assertions of attorney work product and attorney-client privilege are sufficient and provides the affidavits of Mr. Mincher, Ms. Goins-Johnson, and Ms. Bartholomew as an evidentiary basis as support. (ECF Nos. 177-3, 4, 5). In Reply, Plaintiffs claim that the affidavits do not withstand scrutiny and the State's privilege log fails to sufficiently identify each named individual. (ECF No. 181 at 4-5). The Court only partially agrees with the Plaintiffs.

When information is withheld by claiming privilege, the withholding party must: "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A); *see also* Discovery Guideline 10 (D. Md. 2016). This process is achieved using privilege logs, and a sufficient one identifies "each document withheld, information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter." *Elat v. Ngoubene*, No. CIV. PWG-11-2931, 2013 WL 4478190, at *4 (D. Md. Aug. 16, 2013) (citing Discovery Guideline 10.d.; Paul W. Grimm, Charles S. Fax, & Paul Mark Sandler, *Discovery Problems and Their Solutions,* 62–64 (2005)).

If the claimed privilege is challenged, the asserting party must establish an evidentiary basis for the privilege. *Elat*, 2013 WL 4478190, at *5. And if still contested, the dispute may be submitted to the court for review. *Id.* Currently, we are within this third step where the "party asserting privilege has the burden of demonstrating its applicability." *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011).

First, Plaintiffs' argument that all items on a privilege log must detail any drafters, receivers, senders, etc. or be legally insufficient is too stringent an application. Discovery Guideline 10 outlines that sufficient assertions of privilege differ between oral communications and documents. *See* Loc. R. App. A Guideline 10.d.ii.b. In oral communications, the names of the maker and those present are of particular importance. Whereas, the standard for asserting privileges for documents asks for: "(i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to

8

identify the document including, *where appropriate*, the author, addressee . . . ." (*Id.*) (emphasis added).

With this guidance, the Court finds that failure to include a document's author or receiver is not *per se* insufficient. The objective is to provide enough information to determine whether a claimed privilege can be sustained, without revealing the very information claimed to be privileged. This Court holds that the State has sufficiently done so in certain cases and, in keeping with its September 27, 2017 Memorandum Opinion, (ECF No. 88 at 5-6), the Court will uphold the privilege of Bates Nos. S 1176, 1179; U 18; W 5, 6, 25-26, 27-33, 34-36, 47; and X 5-9, 14-17.

As for the remainder, the Court agrees with Plaintiffs that there is insufficient information to determine the identities of all individuals named within the privilege logs. After review of the record before it, the Court cannot discern whether the involvement of Thomas Stack, Lisa Smith, Lauren Lipscomb, A. Chase, or G. Adams would cause third-party waiver of the asserted privilege. Accordingly, the Court orders the State to provide Plaintiffs with a list of individuals and corresponding jobs named within the privilege log by November 5, 2018 and/or additional narrative that would justify the assertion of privilege. If after receipt of this list, Plaintiffs still wish to challenge the asserted privilege they may do so by letter to the Court.

**III. Executive Privilege**

Plaintiffs argue that the State erroneously asserted executive deliberative process privilege for factual information and otherwise failed to sufficiently substantiate the assertions. (ECF No. 172 at 6-7). Plaintiffs also maintain that recommendations concerning parole made more than 180 days ago are non-privileged and that documents circulated outside of the Governor's office must be produced.

9

As previously outlined by this Court, the focus of the deliberative process privilege is protecting against disclosure of "letters, memoranda or similar internal government documents containing confidential opinions, deliberations, advice or recommendations from one governmental employee or official to another official for the purpose of assisting the latter official in the decision-making function." *Johnson v. Baltimore City Police Dept.*, No. CIV. ELH–12–2519, 2013 WL 497868, *6 (D. Md. Feb. 7, 2013) (internal citations omitted). In order for an objection based on the deliberative process privilege to apply, a document must be both predecisional and deliberative. "Predecisional documents are those prepared in order to assist an agency decisionmaker in arriving at his decision and deliberative documents are those that reflect the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *Solers, Inc. v. IRS*, 827 F.3d 323, 329 (4th Cir. 2016).

After having reviewed the Parties' arguments and the evidentiary basis provided by the State, this Court will uphold the majority of the State's claims of privilege. First, the State has sufficiently shown to the Court that those documents challenged as factual are properly protected under the executive deliberative process privilege and, to the extent that any contain factual information, that information is inextricably intertwined except for one document discussed below. Second, to the extent Plaintiffs contend that some documents where "circulated outside" of the Governor's Office and must be produced, this Court disagrees. Deliberative assistance by agents of the executive is contemplated and protected under executive privilege. Here, the challenged communications are between officials of the executive branch evaluating possible policies and thus merit protection. Third, simply because the Office of the Governor potentially came to a final parole decision, does not nullify deliberative process protection of predecisional

documents and communications. Instead, the State is only expected to "produce the portions of the already-decided [files] that contain only factual information." (ECF No. 88 at 5). Therefore, the Court upholds the privilege of Bates Nos. R 30, 35, 851-77, 979-80, 1189-91, 1310-13, 1344; W 37, 38-40, 41-42, 45-46, 47, 48-49, 52-53, 54-55, 62-64; X 1-2, 22-26; L 1, 37-38, 2196-97, 3525-26, 3559-61, 3680-82, and 3795-96.

This Court is not prepared to accept the State's arguments in regards to Bates No. W 24. While "Statistics prepared by the Office of Legal Counsel for the Governor" may include material utilized in deliberations and was created by an office frequently cloaked in privilege, raw statistics do not rise to the level of predecisional documents protected by deliberative process privilege. Therefore, Bates No. W 24 must be produced.

Last, the Court cannot discern the identities of some individuals noted within the privilege log. Thus, the Court reserves judgement on whether Bates Nos. S 929, 970, 972, 975, 1183-88, 1304-09, 1314-25, 1330; X 3-4, and 13 are privileged due to the possible presence of third parties and waiver. As ordered above, the State is to provide Plaintiffs with a list of individuals and corresponding jobs named within the privilege log by November 5, 2018 along with any narrative necessary to justify the assertion of privilege. If after receipt of this list, Plaintiffs still wish to challenge the asserted privileges they may do so by letter.

### IV. Seventeen (17) Files

In its Reply, Plaintiffs claim that the State is withholding seventeen (17) parole files for commutation consideration in an attempt to take advantage of "the very dysfunction" being challenged to prevent Plaintiffs from "discovering the documents to which they are entitled." (ECF No. 181 at 1). While they need not be produced while pending before the Governor, this Court notes that in September 27, 2017, seventeen (17) files were also pending before the

Governor. (ECF No. 88 at 5). If these are the exact same files, then the Court instructs the Parties to confer and determine if there is a means agreeable to both for the production of factual information. If they are not, then Plaintiffs will have to wait for the Governor's decision.

**V.    Emails**

Plaintiffs claim that the State failed to search the email accounts of the other defendants for responsive communications and documents. (ECF No. 172 at 10). The State contends that it properly complied by only producing the Governor's emails with the Parole Commission because document request no. 6 is the only request that asks for "correspondence," whereas all the other requests did not ask for correspondence. (ECF No. 177 at 22). In response, Plaintiffs argue that each request asked for "Documents," and the requests defined "documents" as "synonymous in meaning and equal in scope to the usage of the term 'documents' in Fed. R. Civ. P. 34(a) . . . . Unless, the producing party demonstrates under burden . . . electronic mail is included within the definition of the term "document." (ECF Nos. 172-2 at 3 and 8).

In the Court's view, the State's reading is too narrow. Based on the time limits that the Court outlined for the scope of discovery above, the State will produce responsive non-privileged emails and attachments from the named defendants not already produced.

**VI.    Minutes**

Plaintiffs claim that the State did not produce the minutes generated during Maryland Parole Commission meetings. (ECF No. 172 at 10). Plaintiffs ask that this Court order the production of those minutes and all other minutes from "any case management department or group and any other group of individuals responsible for revising or implementing Maryland's parole scheme for juvenile lifers." (*Id.*).

12

The State concedes the existence of the minutes and offers to "produce copies of the minutes of the Parole Commission's open and closed meetings from January 1, 2016, to date, that are responsive . . . as well as copies of the minutes of Division of Correction Case Management meetings held after February 6, 2018, at which juvenile lifer classification was discussed." The State concludes by saying that, if privileged and non-responsive information is redacted, a privilege log and supporting affidavit will accompany any production.

The State's proposal is reasonable, but in light of the above, this Court will expand the scope of minutes offered to the minutes of the Parole Commission's open and closed meetings, and of Division of Correction Case Management meetings held since the current Governor took office. In the event that privileged information is redacted, this Court further instructs the State to provide any necessary privilege logs and supporting affidavits.

## VII. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Compel (ECF No. 172) is GRANTED in part and DENIED in part. A separate Order shall follow.

Dated: October 25, 2018                              /s/
                                                     J. Mark Coulson
                                                     United States Magistrate Judge