IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARYLAND RESTORATIVE　　　　　　　　*
JUSTICE INITIATIVE, *et al.*
　　　　　　　　　　　　　　　　　　　*
　　　Plaintiffs,
　　　　　　　　　　　　　　　　　　　*
v.　　　　　　　　　　　　　　　　　　　　　Civil Case No. 16–01021–ELH
　　　　　　　　　　　　　　　　　　　*
HOGAN, *et al.*
　　　　　　　　　　　　　　　　　　　*
　　　Defendants.
　　　　　　　　　　　　　　　　* * * * * * *

## **MEMORANDUM OPINION**

This case concerns a challenge to the constitutionality of Maryland's parole system as applied to individuals who received sentences of life imprisonment with parole for homicide offenses committed as juveniles. The Maryland Restorative Justice Initiative ("MRJI") filed suit on behalf of Calvin McNeill, Nathaniel Foster, and Kenneth Tucker (collectively, "Plaintiffs") against four Maryland officials in their official capacities: Governor Larry Hogan; David Blumberg, Chair of the Maryland Parole Commission; Stephen Moyer, Secretary of the Maryland Department of Public Safety and Correctional Services; and Dayena M. Corcoran, Commissioner of the Maryland Division of Correction, (collectively, the "State").

This case was referred to me for resolution of all discovery and related scheduling matters pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF No. 85). Now pending before the Court is Plaintiffs' Motion for Reconsideration of September 27, 2017 Order Regarding Production of Risk Assessments. (ECF No. 208-1). The issues are fully briefed, (ECF Nos. 208-15 and 208-21), and no hearing is necessary. See Loc. R. 105.6 (D. Md. 2018). For the reasons below, Plaintiffs' motion will be **DENIED**.

1

I. **Background**

On September 27, 2017, this Court granted in part and denied in part Plaintiffs' first motion to compel concerning a number of discovery requests. (ECF No. 88). In doing so, the Court declined to compel a full response to Request for Production 4: "[a]ll documents relating to all risk assessments conducted on any Lifer on or after January 1, 1995." Despite the Plaintiffs' insistence that the "Risk Assessments" are necessary for them to fully understand the parole/commutation process in Maryland, the Court declined to order the request in full. Along with sharing the State's concerns over producing such highly sensitive personal information, the Court acknowledged that Plaintiffs' suit challenges the process as a whole, and not as it was applied to any one individual. That is, although the Court agreed that Plaintiffs should have an understanding of the *kinds* of information being collected on the Risk Assessment, the particular responses for any given inmate were less relevant, intrusive, and burdeonsome. Accordingly, the Court ordered that a sampling of the Risk Assessment would impart what was germane while minimizing exposure of highly sensitive information and the accompanying burdens of production. Specifically, the Court ordered the State to produce six sample Risk Assessments (three from juvenile lifers and three from adult lifers) with the personally-identifiable information redacted.

The six assessments were produced in approximately May 2018. (ECF No. 208-3 at 4). In doing so the State provided the Risk Assessments of a juvenile and adult lifer who had been paroled following commutation by the Governor; the Risk Assessments of a juvenile and adult lifer who had been disapproved for commutation by the Governor; and the Risk Assessments of a juvenile and adult lifer whom the Commission had declined to recommend for parole or commutation. (ECF No. 208-15 at 4). Plaintiff now argues that circumstances necessitate reconsideration and, ultimately, the production of "at least 20% of the juvenile lifer assessments responsive to MRJI's

discovery requests, *to be selected by Plaintiffs*." (ECF No. 208-1 at 2) (emphasis retained). This Court disagrees.

## II. Standard of Review

Under Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" may be revisited by the court at any time before an entry of final judgment. Fed. R. Civ. P. 54(b). While Rule 54 does not set forth the standard for reconsideration of interlocutory orders, such as the discovery ruling at issue here, the Fourth Circuit has held that a motion for reconsideration under Rule 54 is not subject to the same "strict standards" applicable to motions for reconsideration of a final judgment. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). Despite this relative leniency, "most courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions," and will reconsider an interlocutory order only where: "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Cezair v. JPMorgan Chase Bank, N.A.*, No. DKC-13-2928, 2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014) (citations omitted).[1]

## III. Discussion

Plaintiffs argue that circumstances have changed to a point that justifies reconsideration of this Court's September 27, 2017 decision as to the Risk Assessments. Specifically, Plaintiffs assert

---

[1] Furthermore, Local Rule 105.10 states that "any motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order." Local Rule 105.10 (D. Md. 2018). While technically untimely, neither party has seriously argued or briefed the issue. Despite the lack of clear triggering event, the Court will exercise its discretion and deem the motion timely.

that additional production is warranted because circumstances now reveal just how central of a role the assessments play in the process, and the past concerns over confidentiality no longer exist because of the protective order. Plaintiffs request that this Court alter the ruling to instead order the production of "at least 20% of the juvenile lifer risk assessments responsive to MRJI's discovery requests, *to be selected by Plaintiffs*." (ECF No. 208-1 at 2) (emphasis retained).

The State argues that the changing landscape of this case does everything *but* justify more discovery. To the contrary, the State points to the burdens of making such a production and argues that it is patently disproportional when compared to the recent appellate decisions concerning the subject matter of this case, as well as that changing statuses of the Plaintiff's themselves.[2] Lastly, the State contends that the burdens of production are disproportional to what is sought; if this case is about the process as a whole, a massive sample size (such as "at least 20%") to review particular data for specific inmates' situations is not justified.

While arguments of proportionality have some weight in any discovery matter, the starting point for a motion for reconsideration of an interlocutory order is whether Plaintiffs have articulated any compelling reason for reconsideration in light of the standard.

First, Plaintiffs do not point to any intervening changes in the controlling law. Second, Plaintiffs do not supply any new evidence that would cause this Court to reconsider its ruling. Simply put, Plaintiffs argue that the Risk Assessments are far more significant than initially believed such that many more should be produced. The Court does not see these assertions as

---

[2] More specifically, the State recently filed a Motion for Leave to File a Motion for Summary Judgment and to Stay Discovery on the grounds that the Fourth Circuit's recent decision in *Bowling v. Director, Va. Dep't of Corr.*, 920 F.3d 192 (2019) is dispositive of Plaintiffs' case. (ECF No. 213). This motion is not yet ripe and will be decided by Judge Hollander. Additionally, the State points to the changing conditions of the Plaintiffs as reason not to expand the scope of discovery this late in the game. Simply put, one plaintiff is set to be paroled in six months, another was approved for parole and is awaiting a final decision by the Governor, and the last is up for consideration again in nine months. While such developments may be relevant down the line, they have not yet come to pass and are best left to Judge Hollander to consider.

necessarily connected. The fact that Risk Assessment as a tool in the parole process are more prominent does not address why the sample assessments already provided are insufficient.

Lastly, this Court does not view Plaintiffs' expert's input, the passage of the protective order, or allegations of "gaming the system" as amounting to "clear error or . . . manifest injustice" in need of correction.

Plaintiffs' need a larger "sample size" for an expert is unpersuasive for several reasons. First, the argument could have easily been made when they first moved to compel in 2017. Like now, Plaintiffs argued the grave importance of these assessments, so much so that the Court is hard-pressed to believe that they, just now, determined that they would like an expert "to extrapolate" their methodology and would thus need a larger sample size. Secondly, the Court believes that Plaintiffs do and could have access to additional assessments without having to go through the burdens of producing a fifth of them all. Both parties have conceded that any lifer subject to a Risk Assessment can get either a copy or summary of that assessment. Presumably, Plaintiffs have their own. And conceivably, the "more than 100 juvenile lifers" whose interests Plaintiffs contend they are asserting (ECF Nos. 65 and 208-21) could also acquire and supply all the assessments Plaintiffs could need. Accordingly, none of the arguments concerning "sample size" justify reconsideration.

As for the Protective Order, (ECF No. 185), it admittedly does dampen some of the confidentiality concerns behind this Court's September 27, 2017 order. But confidentiality was not this Court's only consideration. By Plaintiffs' own arguments then and now, this case is not about any given individual, but about the process. This Court ordered a limited production of Risk Assessments to give Plaintiffs "some insight into the types of information collected and its potential role in the process." (ECF No. 88) at 7). By all appearances Plaintiffs' gained this desired

5

insight, in that now they assert the need for Risk Assessments with more detail then when done in 2017. Nevertheless, none of that new detail explains to the Court how the production of more assessments would provide for them more information, let alone more relevant and necessary information. Acquiring the sought understand of the Risk Assessments does not now justify the production of "at least 20% of the juvenile lifer risk assessments responsive to MRJI's discovery requests, to be selected by Plaintiffs."[3] (ECF No. 208-1) (emphasis removed).

The Court is similarly unpersuaded by Plaintiffs' claims that the State "gam[ed] the system" or "cherry picked" in their production. This Court's order did not compel the production of six reports at the different phases of the parole/commutation process. However, because it has been Plaintiffs argument since day one that the process as a whole is unconstitutional, the State produced a report from each stage of the process. This seems both fair and reasonable. Plaintiffs still speculate that the assessments produced are inaccurate outliers, but they do so without citation or support. Moreover, the Court has difficulty swallowing Plaintiffs' allegations that the State somehow "cherry-picked" while simultaneously arguing that permitting Plaintiffs to hand pick a sample of 20% of all juvenile lifer risk assessments would in no way result in selection bias. While only requesting 20% seems benevolent at first blush, the additional requirement of Plaintiff selecting their own 20% would result in quite a different outcome. Unless Plaintiffs plan to select at random,[4] then their request would effectively require the State to produce all assessments in a manner that would then permit the Plaintiffs to select their desired 20%. Not only do Plaintiffs' ungrounded allegations of "cherry picking" or "gaming the system" not justify reconsideration,

---

[3] Notably, neither party elaborated as to what this "20%" would entail. Considering the expansive date range at play and how Plaintiffs argue that the three produced represent less than "1% of all juvenile lifers" (ECF No. ECF No. 208-3 at 6), one begins to suspect that any production of "at least 20%" could constitute hundreds of assessments, all needing review and redaction.

[4] Which is unlikely given that one of the criteria listed by Plaintiffs in their brief would be the avoidance of "stale risk assessments." It is therefore foreseeable that determining the existence of such "stale" reports would take some degree of review.

but their proposed alternative is overly burdensome and disproportional as to what can be conceivably learned by the production of more assessments.

Despite nearly two years, Plaintiffs are simply attempting to relitigate the underlying ruling. Nothing presented to the Court now has emerged since the order. It either could have been argued then but was not. Or, is now being argued with more detail. Either way, reconsideration is not justified. *See Coulibaly*, 2011 WL 6837656, at *2 (denying reconsideration where the "motion could not prevail because they seek either to relitigate the same issues addressed by the opinion deciding the motions to dismiss or to introduce new arguments that they failed to raise previously. These are not appropriate grounds for reconsideration.")

**IV. Conclusion**

For the foregoing reasons, Plaintiff's Motion for Reconsideration, (ECF No. 208-1), is **DENIED**. A separate Order shall follow.


Dated: July 15, 2019 　　　　　　　　　　　/s/　　　　　　　　
　　　　　　　　　　　　　　　　　　J. Mark Coulson
　　　　　　　　　　　　　　　　　　United States Magistrate Judge