IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF
MARYLAND

|  |  |  |
|---|---|---|
| **MARYLAND RESTORATIVE JUSTICE INITIATIVE,** *et al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Case No. 1:16-cv-01021-ELH |
| **v.** | * | |
| **GOVERNOR LARRY HOGAN,** *et al.* | * | |
| . | * | |
| Defendants | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### ATTACHMENT 1

### to

### AMICUS OPPOSITION TO PLAINTIFFS' RULE 41 DISMISSAL STIPULATION, AND AMICUS' MEMORANDUM SUPPORTING RECONSIDERATION OF THE COURT'S EARLIER RULE 24 RULING

Index

Settlement Agreement and Release entered into between the Parties in 2021

Exhibit 1 to the Settlement Agreement

Exhibit 2 to the Settlement Agreement

Exhibit 3 to the Settlement Agreement

Exhibit 4 to the Settlement Agreement

Exhibit 5 to the Settlement Agreement

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is entered into by and between Plaintiffs Maryland Restorative Justice Initiative, Calvin McNeill, Nathaniel Foster, and Kenneth Tucker (collectively, "Plaintiffs"), and Defendants Governor Larry Hogan, David Blumberg, Robert Green, and Wayne Hill, each in their official capacities (collectively, "Defendants" and, together with Plaintiffs, "the Parties"). This Settlement Agreement is not, and may not be construed as, a consent decree.

## RECITALS

WHEREAS, a dispute arose between Plaintiffs and Defendants concerning the constitutionality of the State of Maryland's parole procedures for individuals who received life sentences for offenses committed while age 17 or younger ("juvenile lifers"); and

WHEREAS, Plaintiffs filed a lawsuit against Defendants in the United States District Court for the District of Maryland, captioned *Maryland Restorative Justice Initiative v. Governor Larry Hogan, et al.*, Case No. 1:16-cv-01021-ELH ("the Lawsuit"); and

WHEREAS, Defendants deny that Plaintiffs are entitled to any relief with respect to the claims asserted in the Lawsuit by Plaintiffs; and

WHEREAS, the Parties wish to avoid further time, effort, and expense associated with the continued litigation of their respective claims and defenses asserted in the Lawsuit and wish to resolve any and all disputes existing between them without any admission of liability;

NOW, THEREFORE, based on the above Recitals and in consideration of the mutual promises and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. <u>Recitals contractual</u>. The Recitals above are contractual and part of this Settlement Agreement.

2. <u>Third parties</u>. The parties to this Settlement Agreement are Plaintiffs and Defendants. Nothing in this Settlement Agreement shall be construed to make any other person or entity not released by or executing this Settlement Agreement a third-party beneficiary to this Settlement Agreement.

3. <u>Binding agreement</u>. This Settlement Agreement applies to, is binding upon, and inures to the benefit of the Plaintiffs (and their successors, assigns, and designees) and the Defendants (and their successors, assigns, and designees). The parties understand and agree, however, that the document attached as Exhibit 4 to this Settlement Agreement entitled "Governor Lawrence Hogan's Parole Consideration Process for Inmates Serving Life Sentences," may be modified, amended, or replaced by or on behalf of Defendant Governor Lawrence Hogan or a future governor, provided that any modification, amendment, or replacement is consistent with ¶ 10 of Exhibit 1 to this Settlement Agreement and complies with applicable law, including the Constitution of the United States.

4.    <u>Authority to execute</u>. Each undersigned representative of the Parties to this Settlement Agreement certifies that he or she is fully authorized by the Party to enter into and execute the terms and conditions of this Settlement Agreement and to legally bind such Party to this Settlement Agreement.

5.    <u>Entire agreement</u>. This Settlement Agreement, with incorporated additional terms reflected in Exhibit 1 (Settlement Term Sheet for *MRJI v. Hogan*), Exhibit 2 (Draft MPC Regulations), Exhibit 3 (Draft DOC Regulation), Exhibit 4 (Governor Lawrence Hogan's Parole Consideration Process for Inmates Serving Life Sentences), and Exhibit 5 (DOC Case Manager Guidance), constitute the complete, final, and entire understanding of the parties hereto, and they shall not be bound by any terms, conditions, covenants, or representations not expressly contained in this Settlement Agreement, including its incorporated Exhibits. All prior conversations, meetings, discussions, drafts, and writings of any kind are specifically superseded by this Settlement Agreement.

6.    <u>Construction</u>. This Settlement Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing the Settlement Agreement to be drafted.

7.    <u>Counterparts</u>. This Settlement Agreement may be executed in any number of counterpart originals, each of which shall be deemed to constitute as original agreement, and all of which shall constitute one agreement. The execution of one counterpart by any party shall have the same force and effect as if that Party had signed all other counterparts.

8.    <u>Effective Date</u>. The Effective Date of this Settlement Agreement shall be the date that it is approved by the Maryland Board of Public Works.

9.    <u>Non-monetary agreements:</u>

    a.  The Maryland Parole Commission's juvenile lifer parole policies, practices, and procedures shall be revised in accordance with paragraph 3 of Exhibit 1 to this Settlement Agreement and in accordance with the changes on the face of the document appended to this Settlement Agreement as Exhibit 2. Such revisions, with the exception of regulations to be proposed for adoption under the Annotated Code of Maryland, State Government Article, §§ 10-101—10-118, are to be fully implemented and effective within sixty (60) days of the Effective Date of this Settlement Agreement.

    b.  The Maryland Division of Correction's juvenile lifer policies, practices, and procedures shall be revised in accordance with paragraph 5 of Exhibit 1 to this Settlement Agreement and in accordance with the changes on the face of the documents appended to this Settlement Agreement as Exhibit 3 and Exhibit 5. Such revisions, with the exception of regulations to be proposed for adoption under the Annotated Code of Maryland, State Government Article, §§ 10-101—10-118, are

2

to be fully implemented and effective within sixty (60) days of the Effective Date of this Settlement Agreement.

c. The Division of Correction and Maryland Parole Commission shall propose for adoption the regulations appended to this Settlement Agreement as Exhibits 2 and 3 no later than sixty (60) days after the Effective Date of the Settlement Agreement unless the Joint Committee on Administrative, Executive, and Legislative Review ("AELR" Committee) is not accepting proposed regulations for adoption. If the AELR Committee has temporarily suspended acceptance of proposed regulations, then: (i)the Division of Correction and the Maryland Parole Commission shall submit the regulations for adoption within ten (10) days of the date that the AELR Committee is accepting proposed regulations for consideration.

d. To the extent that Exhibit 1 to this Settlement Agreement requires the Division of Correction or the Maryland Parole Commission to propose for adoption a regulation, and such regulation is not adopted, the Division of Correction or the Maryland Parole Commission shall confer with counsel for Plaintiffs to address any issues with the proposed regulation and re-submit the regulation for adoption.

e. Defendants will send written confirmation within 14 days of the date the audits referenced in Exhibit 1, ¶ 5 are completed to counsel for Plaintiffs.

f. The Department of Public Safety and Correctional Services ("Department"), through the Maryland Parole Commission, will provide counsel for Plaintiffs an opportunity to comment on the training materials referenced in Exhibit 1, ¶ 7 prior to the first training session.

g. Once a calendar year, the Maryland Parole Commission will send written confirmation to Plaintiffs' counsel that it has verified compliance with Exhibit 1, ¶ 1.

h. To the extent such protocols are adopted, the Maryland Parole Commission will provide to Plaintiffs revised risk assessment protocols or a description of such protocols reflecting how the terms of Exhibit 1, ¶ 8 that are not self-executing will be accomplished. Defendants shall confirm to Plaintiffs on an annual basis for four (4) years from the Effective Date of the Settlement Agreement that the Department has, with the assistance of an expert in the field of risk assessments, reassessed the reliability of its risk assessment procedures in predicting risk for the Maryland juvenile lifer population, and made adjustments as necessary. If such adjustments are made, a description shall promptly be provided to Plaintiffs.

i. Prior to the meetings referenced in Exhibit 1, ¶ 11, the Maryland Parole Commission will provide counsel for the Plaintiffs a list of juvenile lifers reflecting their status in the parole process and the Division of Correction will provide counsel for the Plaintiffs with the number of juvenile lifers recommended by case managers for a reduction in security by type and the number of each category approved.

3

10.     Release. Except for the obligations set forth in this Settlement Agreement, each of the Plaintiffs, being of lawful age, for his or herself and any claiming through him or her, his or her heirs, executors, administrators and assigns, do release, acquit and forever discharge the State of Maryland and the Defendants, in both their official and personal capacities, as well as their respective successors and assigns, departments, divisions, units, officials, officers, agents, servants, representatives, employees and independent contractors and any and all other persons, associations and corporations, whether or not named herein or referenced, who together with the Defendants may be jointly or severally liable to the Plaintiffs (the "Releasees"), from all claims, including claims for damages, attorneys' fees and costs, included in, which could have been included in, or are related in any way to the claims alleged in the Lawsuit, including claims for attorneys' fees and costs, as of the date of execution of this Agreement.

11.     No admission of liability. The Parties agree that the provision and receipt of the consideration provided for herein, the releases provided herein, and the execution of this Settlement Agreement are not to be construed as admissions of liability on the part of any Party, but instead are in full settlement of the above-referenced matters for which liability is denied and for which the Defendants wish to avoid the continued expense of litigation. The Defendants have denied and continue to deny all charges of wrongdoing arising out of any of the conduct, statements, acts or omissions alleged in the Lawsuit, including without limitation the claim that the Defendants violated the United States Constitution, the Maryland Constitution, or the Maryland Declaration of Rights. This Settlement Agreement shall in no event be construed or deemed to be evidence of an admission or concession on the part of the defendants with respect to any claim or of any fault, liability, wrongdoing, or damage whatsoever.

12.     Voluntary settlement. Plaintiffs acknowledge that no representation of fact or opinion has been made by the Releasees to induce this compromise with respect to the extent or nature of any injuries or damages or as to the likelihood of future complications, or recovery therefrom, and that the consideration set forth herein is solely by way of compromise of the disputed claim alleged in the Lawsuit.

13.     Enforcement of Settlement Agreement.

    a.     Any action by the Parties to enforce the terms of this Settlement Agreement shall be brought in the United States District Court for the District of Maryland, as permitted by law. The right to seek enforcement under this paragraph shall expire four (4) years from the Effective Date of the Settlement Agreement. In any action to enforce the Settlement Agreement under this paragraph, Plaintiffs shall not be entitled to any damages, attorneys' fees, or costs.

    b.     Failure by any Party to enforce or seek to enforce this Settlement Agreement or any provision thereof or any other obligation to be performed hereunder shall not be construed as a waiver of that Party's right to enforce or seek to enforce other obligations of this Settlement Agreement as permitted by law.

14.     Opportunity to cure. Prior to taking any action to enforce the terms of this Settlement Agreement, counsel for Plaintiffs shall notify counsel for Defendants of the alleged

non-compliance in writing and give Defendants thirty (30) days to investigate and cure the alleged breach.

15.  Upon execution by all parties, the Department shall promptly submit this Settlement Agreement for approval to the Maryland Board of Public Works under the policies of the Board of Public Works.

16.  Attorneys' fees.

    a.  Without any express or implied admission of liability, and subject to the approval of the Maryland Board of Public Works and identification of available appropriated funds, within forty-five (45) days after the approval by the Maryland Board of Public Works, the State of Maryland shall pay the sum of One Hundred Fifty Thousand Dollars ($150,000.00) ("Attorneys' Fees") in a one-time payment to Plaintiffs' counsel, Wiley Rein LLP, 1776 K Street N.W., Washington D.C. 20006, by delivering a check to Wiley Rein.

    b.  The obligation to make the lump sum payment of Attorney' Fees set forth in paragraph 16.a above is subject to the approval by the Board of Public Works. If the Board of Public Works rejects the payment of the Attorneys' Fees by the State of Maryland under this Settlement Agreement, or if the State provides notice to Plaintiffs that it has been unable to identify funds to satisfy the Attorneys' Fees, this Settlement Agreement between the Parties will immediately become null and void, and the Parties will maintain all other rights, obligations, and duties as though the Settlement Agreement between the Parties had never been entered.

17.  Dismissal of Lawsuit. Plaintiffs agree that within five (5) business days of the receipt of the Attorneys' Fees, they shall file a stipulation of dismissal, pursuant to Federal Rule of Civil Procedure 41(a)(2), dismissing the Lawsuit, all Parties to bear their own costs and expenses incurred in connection with the prosecution, defense, and settlement of the claims asserted in the Lawsuit. The dismissal shall be with prejudice, except that the dismissal shall be without prejudice to Plaintiffs' right to move the Court to enforce the Settlement Agreement, as contemplated by Paragraph 13 herein.

18.  Advice of counsel. Each of the Parties represents that each has read this Settlement Agreement and acknowledges that each has been represented or had the opportunity to be represented by legal counsel of his or its own choice throughout all the negotiations which preceded the execution of this Settlement Agreement and that each Party has executed this Settlement Agreement with the consent and on the advice of such legal counsel. Each of the Parties further acknowledges that each Party's counsel have had adequate opportunity to make whatever investigation or inquiry they may deem necessary or desirable in connection with the subject matter of this Settlement Agreement prior to the execution hereof and the delivery and acceptance of the considerations specified herein. Neither this Settlement Agreement itself, nor any rights provided or obligations imposed thereunder, may be assigned by either Party to any third party without the other Party's express written consent.

5

19.    <u>No modifications</u>. This Settlement Agreement, including its exhibits, may not be released, modified or amended except by a writing signed by all Parties.

20.    <u>Governing law</u>. This Settlement Agreement is governed by, and interpreted and enforced according to, the laws of the State of Maryland without regard to conflict of laws principles.

IN WITNESS WHEREOF, the Parties hereto knowingly, voluntarily and with full authority, execute this Settlement Agreement as of the date(s) set forth below.

FOR THE PLAINTIFFS:

_____          1-27-21
PLAINTIFF   Kenneth Tucker        Date

_____          _____
PLAINTIFF                         Date

_____          _____
PLAINTIFF                         Date

_____          _____
PLAINTIFF                         Date

FOR THE DEFENDANTS:

_____          _____
DEFENDANT                         Date

_____          _____
DEFENDANT                         Date

6

19.     No modifications. This Settlement Agreement, including its exhibits, may not be released, modified or amended except by a writing signed by all Parties.

20.     Governing law. This Settlement Agreement is governed by, and interpreted and enforced according to, the laws of the State of Maryland without regard to conflict of laws principles.

IN WITNESS WHEREOF, the Parties hereto knowingly, voluntarily and with full authority, execute this Settlement Agreement as of the date(s) set forth below.

FOR THE PLAINTIFFS:

_____
PLAINTIFF

_____
Date

_____
PLAINTIFF Calvin McNeill

Feb. 3. 2021
Date

_____
PLAINTIFF

_____
Date

_____
PLAINTIFF

_____
Date

FOR THE DEFENDANTS:

_____
DEFENDANT

_____
Date

_____
DEFENDANT

_____
Date

6

19.    <u>No modifications</u>. This Settlement Agreement, including its exhibits, may not be released, modified or amended except by a writing signed by all Parties.

20.    <u>Governing law</u>. This Settlement Agreement is governed by, and interpreted and enforced according to, the laws of the State of Maryland without regard to conflict of laws principles.

IN WITNESS WHEREOF, the Parties hereto knowingly, voluntarily and with full authority, execute this Settlement Agreement as of the date(s) set forth below.

FOR THE PLAINTIFFS:


_____          _____
PLAINTIFF                                                     Date


_____          _____
PLAINTIFF                                                     Date

_____          Feb. 4, 2021_____
PLAINTIFF Nathaniel Foster                                   Date


_____          _____
PLAINTIFF                                                     Date


FOR THE DEFENDANTS:


_____          _____
DEFENDANT                                                    Date


_____          _____
DEFENDANT                                                    Date

19.  No modifications. This Settlement Agreement, including its exhibits, may not be released, modified or amended except by a writing signed by all Parties.

20.  Governing law. This Settlement Agreement is governed by, and interpreted and enforced according to, the laws of the State of Maryland without regard to conflict of laws principles.

IN WITNESS WHEREOF, the Parties hereto knowingly, voluntarily and with full authority, execute this Settlement Agreement as of the date(s) set forth below.

FOR THE PLAINTIFFS:

_____          _____
PLAINTIFF                                 Date

_____          _____
PLAINTIFF                                 Date

_____          _____
PLAINTIFF                                 Date

_____          _____
PLAINTIFF                                 Date
Maryland Restorative Justice Initiative
By: Walter Lomax

FOR THE DEFENDANTS:

_____          _____
DEFENDANT                                 Date

_____          _____
DEFENDANT                                 Date

6

_____

DEFENDANT

_____2/10/21_____

Date

_____

DEFENDANT

_____2/10/2021_____

Date

Approved for legal sufficiency:

Susan Howe Baron

Susan Howe Baron
Assistant Attorney General

7

CONFIDENTIAL
SUBJECT TO FRE 408

## Settlement Term Sheet for *MRJI v. Hogan*

1. For juvenile lifers, the time from the parole hearing to the final parole decision will be no longer than eighteen months, including any gubernatorial consideration.

2. Juvenile lifers will receive written notification that the case is being held for a risk assessment, considered en banc, or given a favorable decision from the Parole Commission. A juvenile lifer who has served 25 years without application of diminution of confinement credits and obtains a favorable decision from the Parole Commission will be copied on the decision transmitted to the Governor.

3. The Parole Commission will issue written policies governing the parole consideration process for juvenile lifers.  These policies will provide the following: the Commission will notify prisoners in writing of the right to seek judicial review of a parole decision as permitted by law; parole decisions issued by the Commission will include specific findings as to why a juvenile lifer has or has not demonstrated suitability for parole and if the juvenile lifer has not done so, give guidance for improvement on dynamic factors, regardless of the stage at which the Commission declines to advance the case; the Commission will record the parole hearings of juvenile lifers and will retain the recording of the hearing until the next hearing or appeal therefrom; the Commission will not consider that the State's Attorney is the victim in a case unless the victim has designated the State's Attorney as the victim's representative; the process for parole candidates and their representatives to access records used to determine parole suitability based on their statutory right of access; a streamlined process for parole reconsideration of individuals previously been found suitable for parole or clemency by the Commission including a rebuttable presumption that an individual remains suitable; the diminished salience of the nature and

**EXHIBIT 1**

CONFIDENTIAL
SUBJECT TO FRE 408

circumstances of the offense after the first parole hearing; the Commission will meet with individuals denied parole by the Governor to ensure they understand the rationales provided and to assist in developing recommendations for improving the likelihood of success in the future; and guidance as to when the Commission will make an explicit recommendation for a progression below medium.

4. For each juvenile lifer who receives a parole hearing, the Parole Commission will determine the inmate's suitability for parole.

5. The Division of Correction will adopt a policy that provides guidance to case managers about conducting security classification for juvenile lifers and that requires the Commissioner of Correction to provide a written rationale for the decision to disapprove a case manager's recommendation to decrease a juvenile lifer's security level. Within 180 days of the execution of a final Settlement Agreement, DOC will audit the current juvenile lifer security reclassifications for accuracy and redo any classifications done incorrectly. DOC will audit a random sample of 25 juvenile lifer security reclassifications for accuracy again within one year of a final Settlement Agreement.

6. The Parole Commission will propose for adoption a regulation that provides that in deciding whether to recommend a juvenile lifer for parole, the Parole Commission accords appropriate weight to the offender's youth status at the time of the offense, and amend other regulatory language to reflect revised policies of the Maryland Parole Commission in its handling of juvenile lifer parole cases.

7. The Department will develop training materials concerning the application of the youth factor discussed above in ¶ 6, as well as the limitations of, and proper consideration of, a risk assessment.

CONFIDENTIAL
SUBJECT TO FRE 408

8. The Department will adopt quality control measures for risk assessments.  It will hire a risk assessment subject matter expert who will train and consult with the psychologists at Patuxent who will conduct risk assessments.  In evaluating risk, the psychologists will review tests that incorporate both static and dynamic factors and consider the relationship between age and recidivism rates.   The Department will make reasonable efforts to periodically reassess the reliability its risk assessment procedures in predicting risk for the Maryland juvenile lifer population, and it will make adjustments as necessary.  The psychologists will apply independent clinical judgment in assessing risk, and they will contextualize their conclusions.   Individuals will not lose their jobs or housing assignments in order to undergo the risk assessment.  Within 120 days of the execution of a final Settlement Agreement, the Commission will consider whether to advance the rehearing dates of juvenile lifers denied parole by the Governor in 2019 or 2020 based in whole or in part on their risk assessment.

9. The Division of Correction (DOC) will propose for adoption a regulation that specifies the circumstances in which a juvenile lifer may progress below medium security.

10. The Governor will promulgate a publicly available policy or order describing the gubernatorial parole consideration process for juvenile lifers.  A juvenile lifer may, on request, examine any document that is not already in the Parole Commission's records, and that the Governor will use in determining whether the juvenile lifer is suitable for parole, subject to the exceptions listed in Corr. Servs. § 7-303(b)(1)(ii) and (b)(2).

11. Six months after and again twelve months after the execution of the final Settlement Agreement, representatives of all parties will attend

**CONFIDENTIAL**
**SUBJECT TO FRE 408**

an in-person meeting to discuss and address any issues arising from the implementation of the Settlement Agreement.

12. The State will pay $150,000 in attorneys' fees.

### MPC Regulations (Proposed Text In Bold Italics)

12.08.01.17

A. Parole Consideration and Parole Hearings

…

    (7) Sentence of Life Imprisonment.

…

        ***(h) When the Commission determines that an individual has demonstrated suitability for parole, the Commission will not send a recommendation for commutation in lieu of a recommendation for parole;***

C. Notice to Inmate and Access to Files.

    (1) Notification. Before any parole hearing, it shall be the duty of the several institutional parole agents to furnish the applicant for parole with written notice of the:

        (a) The date, time, and place of the hearing;

        …

        …

    (3)  Time of Notice. The notice shall be furnished the inmate not less than ***15*** days before the parole hearing unless, in certain individual cases and for good cause, the time must be shortened.

    …

    (5) Review of Parole Commission file.

        …

    (b.) Except as provided in Correctional Services Article, § 7-303(b)(1)(ii), Annotated Code of Maryland, the inmate ***and*** the inmate's representative may, on request, examine a document that the Commission or Hearing Examiner uses in determining whether the inmate is suitable for parole***. A State's Attorney's communications concerning an inmate who is being considered for parole are***

**EXHIBIT 2**

***not confidential unless the Commission believes that releasing the communications would compromise the safety of one or more individuals.  If any documents are withheld, the Commission will list each document being withheld and provide a summary as required by*** Correctional Services Article, § 7-303(b)(1)(iii)***.***

…

(d.) If a risk assessment ***is prepared for the Commission, upon receipt by the Commission, it will provide the individual with a copy of his or her risk assessment or a summary of the risk assessment.***

....

12.08.01.18 Consideration for Parole.

  A. General.

    (1) — (2) (text unchanged)

    (3) ***In deciding whether an inmate serving a life sentence for a crime committed under the age of 18 is suitable for parole, the Commission considers whether the individual has adequately demonstrated maturity and rehabilitation since commission of the offense.***  In addition to the factors contained under §§A(1) — (2) of this regulation, the Commission considers the following ***mitigating*** factors**, *to which it affords appropriate weight,*** in determining whether a prisoner who committed a crime as a juvenile is suitable for release on parole:

    (a) Age at the time the crime was committed;

    (b) The individual's level of maturity and sense of responsibility at the time of the crime was committed;

    (c) Whether influence or pressure from other individuals contributed to the commission of the crime;

    (d) Whether the prisoner's character developed since the time of the crime in a manner that indicates the prisoner will comply with the conditions of release;

    (e) The home environment and family relationships at the time the crime was committed;

    (f) The individual's educational background and achievement at the time the crime was committed; ***and***

    (g) Other factors or circumstances unique to prisoners who committed crimes at the time the individual was a juvenile that the Commissioner determines to be relevant.

    (4) To make these determinations the Commission examines:

(a) The offender's prior criminal and juvenile record and the offender's response to prior incarceration, parole or probation, or both;

(b) The offender's behavior and adjustment and the offender's participation in institutional and self-help programs, *including progression to lesser security in the Division of Correction*;

(c) — (l) (text unchanged)

*(5) The circumstances surrounding the crime, which diminish in significance as a consideration after the initial parole hearing.*

*(6)   The Commission may recommend that an inmate serving a sentence for a crime committed under the age of 18 progress to a lower security level in the Division of Correction under the following circumstances and as provided in E(3)(e):*

*(a) The inmate has completed all programming and treatment available at the current security level;*

*(b) The inmate would benefit from privileges, programming and treatment that are available at only the lower security level, including the opportunity to demonstrate parole suitability through adjustment at the lower security level; or*

*(c) The individual was previously found suitable for release by the Commission.*

*(7) Any risk assessment tool relied upon by the Commission will include dynamic factors and will account for independent clinical judgment in assessing risk.*

*(8)   In deciding whether to recommend parole for an inmate serving a sentence of life imprisonment, the Commission shall not consider whether the inmate has successfully completed a period of work release if the inmate has never been eligible for work release.*

B. Hearings.

(1) – (4) (text unchanged)

C. Procedure.

(1) (text unchanged)

(2)   Parole hearings conducted by *parole commissioners and* hearing examiners shall be electronically or stenographically recorded. [to preserve a record for appeal unless the

~~inmate waives the recording with the understanding the waiver might preclude an appeal].~~

(3) ***Except as provided in paragraph (4) of this regulation,*** the record***ing*** will be destroyed 30 days after the hearing unless an appeal has been taken under the provisions of Regulation .19. In cases of appeal, the record***ing*** shall be destroyed upon conclusion of the appeal hearing.

***(4) The recording of a parole hearing conducted for an inmate serving a life sentence for a crime committed under the age of 18 shall be retained until after the later of the conclusion of the inmate's next parole hearing or until the final disposition of any action for judicial review of the parole decision.***

(renumbering remainder of subsection)

D.  (text unchanged)

E.  Decisions
   (1)     At the end of a parole interview, the inmate shall be verbally informed of the hearing examiner's recommendation, or of the decision in cases heard by two or more commissioners.

   (2)     A written copy of the hearing examiner's recommendation and the Commission's action relative to the recommendation, or a written copy of a Commission panel's decision shall be prepared and served upon the prisoner in accordance with Correctional Services Article, §§ 7-306 and 7-307, Annotated Code of Maryland.  A copy of the written decision shall be retained in the Commission's file on the prisoner and in the prisoner's institutional base file.

   ***(3)     A written decision denying parole to an inmate serving a life sentence for a crime committed under the age of 18 shall include specific findings as to why the inmate has failed to demonstrate suitability for parole.  The decision shall:***

      ***(a) state that the Commission has weighed the diminished culpability of youth, hallmark features of youth, and capacity for growth and maturation in reaching this conclusion;***

      ***(b) state why the Commission has determined that the inmate has not yet demonstrated sufficient maturity and rehabilitation;***

*(c) state why the Commission has concluded that the individual has not demonstrated suitability for parole;*

*(d) provide guidance to the extent possible as to what the inmate can do to improve his or her likelihood of demonstrating suitability at his her or her next parole hearing, and make specific recommendations as to programming or treatment, as appropriate; and*

*(e) notify the inmate of the right to seek judicial review of the decision as permitted by law.*

*(f)  When the Commission determines that an individual is nearing parole suitability, the Commission will so indicate and will recommend the individual progress to lesser security.*

(4)     If the decision resulting from the hearing is to rehear the prisoner's case at a later date and if the parole rehearing is open to the public under COMAR 12.08.01, the rehearing may be held up to 90 days later than the rehearing date specified in the decision.

*(5)*     When further information is deemed necessary, the Commission may defer its decision pending receipt of the same.  A final decision shall be promptly rendered upon receipt of the information and shall be served as provided by law unless the Commission elects to promptly reinterview the inmate before making its decision. *If the Commission decides not to recommend parole for an inmate serving a life sentence for a crime committed under the age of 18, the Commission will give a copy of the decision to the juvenile lifer within 18 months of the parole hearing.  The Commission will send a parole recommendation for an inmate serving a life sentence for a crime committed under the age of 18 to the Governor no later than 12 months after the parole hearing.*

*(6)*     Information shall be disclosed to the inmate in accordance with Regulation .17C(5) of this chapter.  *The Commission shall furnish timely written notice to an inmate serving a life sentence for a crime committed under the age of 18 if the Commission has ordered a risk assessment, received the risk assessment report, decided to consider the case en banc, and/or recommended parole to the Governor. .  The Commission will not withhold from the individual or representative, if any, his or her status in the parole process.*

*(7)     The Commission may neither permanently refuse parole to an inmate serving a life sentence for a crime committed under the age of 18, nor schedule any rehearing in excess of ten years from the date of the hearing.*

F. – I. (text unchanged)

12.08.01.23 Consideration and Review

B. (1)-(5) (text unchanged)

*(6) If the Governor disapproves the Commission's recommendation to an inmate serving a life sentence for a crime committed under the age of 18, the Commission shall, after providing written notice to the individual, consider the inmate for parole en banc within eighteen months of the date of the Governor's decision.   The Commission shall recommend the inmate for parole unless the Commission finds good cause not to do so.  If the Commission finds good cause not to recommend the inmate for parole, the Commission shall set forth its reasoning in its written decision.*

*(7)  When the Governor has disapproved the Commission's recommendation to approve an inmate serving a life sentence for a crime committed under the age of 18, two commissioners shall:*

*(a) ensure that the decision is hand-delivered to the inmate;*

*(b) explain the decision to the inmate;*

*(c) consider the individual for an explicit recommendation of progression to lesser security to the extent a positive adjustment at lesser security can help demonstrate parole suitability;*

*(d) provide guidance about what the inmate can do to improve the likelihood of demonstrating suitability for parole at the next parole hearing, and provide specific recommendations as to programming or treatment, as appropriate; and*

*(e) notify the inmate of the right to seek judicial review of the decision as permitted by law.*

## DRAFT DOC REGULATION

Juvenile classification

General

A. A "juvenile lifer" is an inmate serving a life sentence for a crime committed under the age of 18.
B. A "release date" is (a) the date on which a juvenile lifer who has been conditionally approved for parole by the Governor may be released on parole, or (b) the anticipated date on which a juvenile lifer is entitled to release on mandatory supervision.
C. An "outside detail" is a work assignment at a location other than the facility in which an inmate is housed, and during which the inmate is under the direct supervision of a State employee.
D. This regulation applies solely to juvenile lifers.
E. This regulation supersedes any conflicting regulation or policy.
F. "Commissioner" means the Commissioner of Correction.
G. "Secretary" means the Secretary of Public Safety and Correctional Services.


Classification and Program Eligibility

A. Upon admission of a juvenile lifer to the Division of Correction, the Division shall use the Initial Security Classification Instrument to conduct an individualized assessment of the inmate to assign the inmate's security level.

B. The Division of Correction shall place the inmate at the least restrictive security level consistent with the inmate's needs, public safety, and the safe and orderly operation of the facility.

C. An inmate is presumed to be able to progress to lesser security if his or her score on the Division of Correction Security Reclassification Instrument indicates eligibility for lesser security. The mandatory override in the instrument precluding progression below medium security for individuals serving life sentences does not apply to juvenile lifers. Any override of the instrument requires a written explanation of the basis for the decision.

D. After initial placement, eligibility for lesser security, including outside detail and work release, and access to programs shall be determined by assessing the inmate in accordance with the Case Management Manual and other applicable directives and regulations.

**EXHIBIT 3**

E.  Individuals will not lose any privileges, jobs or housing assignments in order to undergo a risk assessment requested by the Maryland Parole Commission.

F.  Case managers and the Commissioner shall give significant weight to requests or recommendations of the Maryland Parole Commission that an individual be permitted to progress to lesser security or complete particular programming to improve parole suitability.

G.  A juvenile lifer, regardless whether the juvenile lifer has a release date, shall be eligible for a reduction below medium security status if approved by the Commissioner, or a designee of the Commissioner.  If the Commissioner or designee disapproves a juvenile lifer for reduction below medium security status, the Commissioner or designee shall issue a written decision explaining the reasons for the decision.  A copy of the decision shall be provided to the juvenile lifer.

H.  A juvenile lifer who has a release date shall be eligible for an outside detail or work release, if approved by the Commissioner or a designee of the Commissioner.  If the Commissioner or designee disapproves a juvenile lifer for an outside detail or work release, the Commissioner or designee shall issue a written decision explaining the reasons for the decision.  A copy of the decision shall be provided to the juvenile lifer.

I.  Except as provided in (H), a juvenile lifer who does not have a release date shall not be eligible for work release but, if warranted by exceptional circumstances, shall be eligible for an outside detail if recommended by the Commissioner of Correction or a designee of the Commissioner, and approved by the Secretary.  If the Secretary disapproves an outside detail for a juvenile lifer, written notice of the decision shall be provided to the juvenile lifer.

**Governor Lawrence Hogan's Parole Consideration Process**
**for Inmates Serving Life Sentences**

*Parole decisions and recommendations made by the Maryland Parole Commission*

1. Parole decision or recommendations and relevant documents from the parole file from the Maryland Parole Commission will be transmitted to the Governor's Office of Legal Counsel ("OLC").
2. Unless the unique circumstances of the case render an investigation unnecessary, the OLC will request the Division of Parole and Probation to conduct a post-sentence investigation. Documents in the file may be shared with the investigator, as appropriate.
3. Investigators may be tasked, among other things, with:
    a. learning details about the inmate's proposed home plan (housing, employment, financial support, transportation, etc.);
    b. identifying and locating any victims or their family members to ascertain their opinions about a possible parole;
    c. verifying any recommendations received either in support or opposition of parole; and
    d. locating any documents or information typically contained in a parole file but omitted in the instant case.
4. The report may contain other facts and information about the case that the investigator discovers and believes may be useful to the Governor.
5. Unless the unique circumstances of the case render it unnecessary, the State's Attorney's Office that prosecuted the underlying case will typically be contacted and given the opportunity to provide input.
6. The OLC will in the usual case schedule an interview with the inmate at the prison, unless security reasons dictate otherwise or unless an interview would not be productive.
    a. An interview will not normally be conducted for a medical parole.
    b. The inmate will be given the opportunity to speak on his or her own behalf and provide information pertinent to the legal factors considered in the parole decision.
    c. The attorney who has conducted the interview will prepare a memorandum for the file, memorializing the discussion and noting mental impressions and thoughts about the interview.
7. The following individuals or entities may call, write to, or meet with the OLC to advocate for or against parole: an inmate who has received a parole decision or recommendation; the inmate's family, friends, and advocates; victims and their relatives; attorneys, lobbyists, organizations, or law clinics representing any of the foregoing; and other interested parties. Calls and meetings are memorialized in memoranda to the file, and any documentation presented is added to the file as well.

A juvenile lifer may, on request, examine any document that is not already in the Parole Commission's records, and that the Governor will use in determining whether the juvenile lifer is suitable for parole, subject to the exceptions listed in Corr. Servs. § 7-303(b)(1)(ii) and (b)(2).

**EXHIBIT 4**

8. After the investigation and interview are complete, the OLC will prepare and transmit materials on the case for the Governor's review. Members of the OLC may meet with the Governor as well to answer specific questions, review documents from the file, and provide any other requested information relevant to the Governor's decision.

9. If the Governor approves or disapproves a parole, the decision will be transmitted to the Parole Commission for delivery to the inmate. A member of the OLC may, circumstances permitting, meet with an inmate in person to deliver and review a parole approval.

**Appendix __ to DOC Case Management Manual**

**Guidance to Case Management Specialists
concerning Juvenile Lifer Security Classification**

General:

Juvenile lifers are entitled to a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.  Case managers must consider their youth status as a mitigating factor when evaluating them for security classification and preparing any pre-parole summary.  Pre-parole summaries should address the factors considered by the Maryland Parole Commission.

Security Classification:

OPS.100.0004 provides that all juvenile lifers are eligible for reduction below medium security. This policy has also been incorporated into the Case Management Manual at Section 7.D(5) effective July 31, 2019, which provides that "[a]n inmate serving a life sentence for an offense that the inmate committed as a juvenile, shall be eligible for a reduction below medium security status if approved by the Commissioner, or a designee." The language in OPS.100.0004 and Section 7.D(5) of the Case Management Manual supersedes any other reclassification policy and/or interpretation by any staff person. Compliance with this policy is mandatory.

Because parole-eligible juvenile lifers are eligible for reduction below medium security, the entirety of Section B of the Security Reclassification Instrument applies, and the radio box adjacent to #10 should not be checked. Additionally, special care must be taken to choose the appropriate dropdown option from #10.B.

Juvenile lifers are not exclusionary offenders, and they are eligible for reduction below medium security.  A case management specialist is not permitted to justify a decision to refuse to reduce a juvenile lifer below medium security because the inmate is an "exclusionary offender," because the inmate "does not meet the minimum security profile," or because the inmate is "ineligible for reduction below medium security." These are inappropriate rationales that violate Division of Correction case management policy.  Any actions using that language will be returned to the case management specialist for correction.

Additionally, any recommended override of the instrument's score for a juvenile lifer is discretionary only.  Any use of the option for mandatory override is not permitted, and any such action will be returned to the case management specialist for correction.

**EXHIBIT 5**

In exercising discretion, in addition to consideration of the usual factors, case managers should give serious consideration to recommendations made by the Maryland Parole Commission that an individual be permitted to advance to lesser security or be permitted to participate in programming and any other means to allow the juvenile lifer to progress in the parole system toward release.

When reviewing security instruments for juvenile lifers, supervisors and case managers shall ensure that all sections are completed correctly, that a rationale is provided regardless of the decision, and that any rationale that accompanies a security recommendation is made in accordance with policy. Furthermore, the juvenile lifer's parole status, including the last known action taken, whether the person has previously been recommended for parole and whether the Parole Commission has recommended the individual for lesser security, should be confirmed and explicitly noted in the comments section.

In order to ensure Division-wide compliance with this policy, all security instruments for juvenile lifers, regardless of their current security classification, and regardless of the facility recommendation, require the Commissioner's final approval and shall be forwarded to Headquarters for review.

Pursuant to COMAR___:

1)   A juvenile lifer who has been approved for parole by the Governor or who has an anticipated mandatory supervision release date is eligible for an outside detail assignment or work release, with the approval of the Commissioner.

2)   A juvenile lifer who does not have an anticipated mandatory supervision release date or approval for parole by the Governor is eligible for an outside detail assignment only with the approval of the Commissioner and the Secretary and is ineligible for work release.